LOUIS LEVIN et al., Respondents, *v.* JAMES E. DIETZ, Appellant.

Specific performance — unilateral contract — when specific performance thereof will be denied.

The mere physical acceptance and attempted enforcement by one party of a contract unilateral in form, executed by another, does not make the former a party to and bound by the contract. *Mason* v. *Decker*, 72 N. Y. 595; *Pettibone* v. *Moore*, 75 Hun, 461; *Jones* v. *Barnes*, 105 App. Div. 287, distinguished.

Specific performance of a unilateral contract will not be adjudged against the party who has executed it, on behalf of the opposite party who is not in any manner bound by the contract.

Specific performance of a contract will be denied in the absence of mutuality of obligation and remedy in both parties to the contract.

*Levin* v. *Dietz*, 119 App. Div. 875, reversed.

(Argued January 27, 1909; decided February 23, 1909.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 26, 1907, unanimously affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The action was brought by the respondents as vendees to enforce the specific performance of a contract claimed to have been made by the appellant for the sale of certain real estate.

The facts relied on as constituting an enforceable contract are set forth in the findings of fact and are quite brief. It is there stated that the appellant was the owner of the premises in question and that " on December 1, 1904, plaintiff and defendant and said Dakin (a broker authorized by the defendant to sell the real estate in question) met and discussed a sale

of the property  *  *.  *  for $16,500 ; that on December
3, 1904, defendant wrote and signed a letter addressed to
plaintiffs in which he stated that he would mail the deeds of
said property to certain brokers in Brooklyn and requiring
plaintiffs to be present on December 5th at a place indicated
in the letter with $16,500 in cash and that they would receive
a deed of said property ; that on the day last mentioned the
defendant wrote and signed a letter addressed to said Dakin
*  *  *  in which the defendant stated that he had written
the intending purchasers  *  *  *  (meaning plaintiffs) to
be ready at the office of Jackson & Dombek on December 5,
1904, at three o'clock P. M., and to have the money ready and
that the property would then be turned over ;  *  *  *  that
the plaintiffs were present at the time and place on the day men-
tioned  *  *  *  and  *  *  *  produced and tendered the
sum of $16,500 and demanded a deed of the premises  *  *  *
and that the defendant was not then and there present and that
no deed of said premises was offered to plaintiffs."

There was no finding of any other or different contract by
parol or otherwise than that above set forth.

*Headley M. Greene* for appellant. The contract was uni-
lateral and, therefore, not enforceable. (*Colt* v. *O'Connor*,
109 N. Y. Supp. 696 ; *Ide* v. *Brown*, 178 N. Y. 26–39 ; *Edson*
v. *Parsons*, 155 N. Y. 555 ; *Mahaney* v. *Carr*, 175 N. Y. 454 ;
*Wadick* v. *Mace*, 191 N. Y. 5 ; *Palmer* v. *Gould*, 144 N. Y.
678 ; *German* v. *Machin*, 6 Paige, 288 ; *Phillips* v. *Berger*,
8 Barb. 528 ; *M. E. Co.* v. *Ward*, 24 Abb. [N. C.] 393 ; *Gall*
v. *Gall*, 64 Hun, 600 ; *Hamlin* v. *Stevens*, 177 N. Y. 47.)

*Frank H. Platt, Morgan J. O'Brien* and *Walter L.
Durack* for respondents. No objection of lack of mutuality
can be predicated upon the fact that no writing was subscribed
by the respondents. (*Bleecker* v. *Franklin*, 2 E. D. Smith,
95 ; *Kittel* v. *Stueve*, 10 Misc. Rep. 696 ; *Earl* v. *Campbell*,
14 How. Pr. 330 ; *N. F. Ins. Co.* v. *Loomis*, 11 Paige, 431 ;
*Champlin* v. *Parish*, 11 Paige, 405 ; *Edwards* v. *F. F. Ins.*

*Co.,* 21 Wend. 467; *McCrea* v. *Purmort,* 16 Wend. 460; *Clason* v. *Bailey,* 14 Johns. 484; *Hunter's Case,* 1 Edw. Ch. 1; *Ballard* v. *Walker,* 3 Johns. Cas. 60; *Worrall* v. *Munn,* 5 N. Y. 229.)

HISCOCK, J. Respondents as vendees are seeking to compel the appellant as vendor to specifically perform a contract for the sale of real estate and he is resisting on various grounds. We deem it unnecessary to discuss more than two of the questions involved in the controversy. We shall assume simply for the purposes of this discussion that the letters signed by the appellant and set forth in the findings already quoted constituted a sufficient compliance with the requirements of the Statute of Frauds. After making this assumption, however, there remain the other questions whether there was any contract binding respondents to buy the real estate which it is claimed appellant agreed to sell, and if not, whether a court of equity at the suit of a party not himself bound will enforce performance by his adversary. We think that both of these questions must be answered in the negative and that it must be held that the respondents were not under any obligation to buy appellant's land and that, therefore, there was lack of consideration for the latter's contract and lack of that mutuality of obligation which are both essential to the successful prosecution of this action.

It has sometimes been intimated in earlier cases in other jurisdictions, if not in this state, that the mere physical acceptance and attempted enforcement by one party of a contract unilateral in form executed by another made the former a party to and bound by the contract. This doctrine, however, has not been adopted or affirmed by later decisions in this state even if elsewhere.

In certain cases cited by the respondents the court has enforced a contract signed by only one party, but in these cases it expressly appeared where the agreement sought to be enforced was one to buy, that the seller had agreed by parol to sell upon the terms mentioned in the paper signed by the

purchaser (*Mason* v. *Decker*, 72 N. Y. 595); or that the written agreement sought to be enforced gave an option which the party seeking to enforce had expressly accepted within the term of its life (*Pettibone* v. *Moore*, 75 Hun, 461; *Jones* v. *Barnes*, 105 App. Div. 287), and under these circumstances it was held that there was a " binding agreement " or a " completed bargain," and that the written contract although unilateral in form could be enforced.

We regard those cases as decided on principles not applicable to this one where there is not claimed to have been any express agreement by the vendees to buy, and where there has been no acceptance by them of the promise of the vendor except such as was involved in their offer to perform at a time when he had withdrawn from his promise. On such facts we see no opportunity to claim that the respondents were under any obligation to buy appellant's land or that there was any mutuality of obligation, and thus we come to the remaining question.

The decision in this state of the question whether equity will enforce against one party performance of a contract not imposing mutual obligations on the other has been attended by more or less confusion and conflict of authorities. This was early exemplified by the opinions of Chancellor KENT in two cases. In the early case of *Benedict* v. *Lynch* (1 Johns. Ch. 370, 373) he wrote in an action for specific performance of a contract relating to the sale of real estate, " I need not stay to examine how far the objection of a want of mutuality is applicable to this contract, since the decision can be placed with more satisfaction upon the intrinsic merits of the case. But the point being stated by the counsel, I am unwilling to pass it by, without observing that it has been ruled in several cases (citing them) that a bill for a specific performance will not be sustained, if the remedy be not mutual, or where one party only is bound by the agreement. This doctrine received a very clear illustration, and an explicit sanction, in a late decision by Lord REDESDALE, * * *. Though there are other cases in which an agreement has not been deemed within the

Statute of Frauds, and a specific performance has been decreed, when the contract was signed only by the party sought to be charged, * * * yet the contrary opinion appears, from the most recent decisions, to be now prevailing." Later, in the case of *Clason* v. *Bailey* (14 Johns. 489), the chancellor again writing on this subject said : " I have thought, and have often intimated, that the weight of argument was in favor of the construction that the agreement concerning lands, to be enforced in equity, should be mutually binding, and that the one party ought not to be at liberty to enforce, at his pleasure, an agreement which the other was not entitled to claim. * * * But, notwithstanding this objection, it appears from the review of the cases, that the point (that a contract not mutual would be enforced) is too well settled to be now questioned."

And cases may be found in this state sustaining this later view of the chancellor. (*Matter of Hunter*, 1 Edw. Ch. 1; *M'Crea* v. *Purmort*, 16 Wend. 460–465 ; *Justice* v. *Lang*, 42 N. Y. 493.)

One case is especially relied on by respondents as deciding that a contract may be enforced notwithstanding lack of mutual obligations and resulting consideration which cannot fairly be cited as authority for that doctrine, and that is the case of *Worrall* v. *Munn* (5 N. Y. 229). Because of its apparent direct conflict with the later cases hereafter to be referred to, this case deserves especial attention. It was brought by plaintiff to compel the specific performance by defendants of a contract for the sale of real estate. The defendants had executed an agreement to convey the lands in question. A counterpart of the agreement was executed by " Henry Worrall for Noah Worrall," the plaintiff, the seal being affixed at the end of the agent's name. It was contended, amongst other things, that the agreement was not properly executed in behalf of the vendee and plaintiff Worrall by his agent, and that, therefore, the agreement not being binding on him was not binding on defendants for want of mutuality. Judge PAIGE finally reached the conclusion that the contract executed by the agent was binding on his principal, and this determination

established the proposition that there was an agreement executed by both vendor and vendee and, therefore, free from the vice of lack of mutuality. Having done this, he then proceeded further and reached the view that even if the agreement was void as to the vendee because of lack of proper execution, still it could be enforced notwithstanding the lack of mutuality. Thus he placed his opinion on two grounds, and this being so, the concluding paragraph of the opinion does not make it plain on which ground the majority of the court concurred with him in his conclusion that specific performance should be enforced.

However, whatever conflict and uncertainty may have been created by earlier decisions, in comparatively recent years a series of cases have come to this court, finally leading up to that of *Wadick* v. *Mace* (191 N. Y. 1), whereby it has been finally and firmly established that specific performance of a unilateral contract will not be adjudged against the party who has executed it on behalf of the opposite party who is not in any manner bound by the contract.

*Palmer* v. *Gould* (144 N. Y. 671) was an action to enforce specific performance of a contract for the sale of land. A judgment decreeing specific performance was reversed, and although the other members of the court reached this decision on other questions, Judge Gray very fully reviewed the authorities bearing on the question whether specific performance of a contract for the sale of lands would be decreed if there was not a mutual obligation and remedy, and very decisively reached the conclusion that it would not be so decreed.

*Stokes* v. *Stokes* (148 N. Y. 708, 716) was an action to enforce specific performance of a contract for the sale of certain stock, and this court in upholding the judgment of the Trial Term dismissing plaintiff's complaint approved the rule that " a contract must possess certain elements in order that a court of equity may exercise jurisdiction to compel its performance. ' It must be upon a valuable consideration.   *   *   *   It must be, in general, mutual in its obligations and its remedy.' "

*Mahaney* v. *Carr* (175 N. Y. 454, 460) was an action to

.enforce specific performance of an alleged agreement to adopt a child and give it a certain share of the adopted father's property.    This court reversed the judgment of the courts below awarding plaintiff a recovery, and Judge O'BRIEN, writing for a majority of the court, said: "If this was a contract it certainly was not a mutual one, binding the child and her father (claiming to have made and seeking to enforce the contract) as well as her grandfather.    *    *    *    In order to justify a court of equity to decree specific performance there must be a contract which in general is mutual in its obligations and its remedy, reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it is made."

*Ide* v. *Brown* (178 N. Y. 26, 39) was an action to enforce a contract somewhat similar in its nature to the one involved in the last action.    And again Judge O'BRIEN reiterates the doctrine that a contract in order to be specifically enforced by the court must be mutual, and that " a party not bound by the agreement itself has no right to call upon a court of equity to enforce specific performance against the other contracting party, by expressing his willingness, in his plea to perform his part of the agreement.    His right to the aid of the court does not depend upon his subsequent offer to perform the contract upon his part, but upon its original obligatory character."

The last case, that of *Wadick* v. *Mace*, was an action like the present one brought by the vendee to compel specific performance of a contract for the sale of lands.    The contract sought to be enforced contained a provision, " That in the event of a breach of the within contract by the party of the second part (vendee and plaintiff), and the said party of the second part being unable to fulfill the terms and conditions of the within contract, then this contract shall be null and void, *    *    *    and no suit or action whether for specific performance or damages shall be maintained by the party of the first part against the party of the second part."    It was assumed that the clause thus quoted resulted in the same lack of

1909.] People ex rel. C. P., etc., R. R. Co. v. Willcox. 383

N. Y. Rep.] Statement of case.

mutuality of obligations as would have existed if the contract had simply been executed by the vendor, and on this assumption Judge WILLARD BARTLETT discussed the question whether specific performance would be enforced of a contract thus lacking in mutual obligations, and after a review of many authorities bearing on that question, and including those last above cited, he reached the conclusion concurred in by all of the members of the court that such specific performance of a contract would be denied in the absence of mutuality of obligation and remedy in both parties to the contract.

In view of the principles thus approved and adopted, it must be held that the order and judgment appealed from were erroneous and must be reversed, and a new trial awarded, with costs to abide event.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Order and judgment reversed, etc.