GARDNER v. THE ROYCROFTERS et al.

(Supreme Court, Appellate Division, Third Department. September 15, 1909.)

1. DAMAGES (§ 120*)—BREACH OF CONTRACT.
    Where defendants, the owners of periodicals, sold to plaintiff the exclusive advertising privileges thereof, reserving to themselves the right to use a certain number of pages for exploiting their own products, and for exchange railroad advertising, and subsequently used more than the reserved space, plaintiff was entitled to receive for the excess the price

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

uniformly received by 'him for similar space, less the amount the owners were to receive therefor under the contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. § 120.*]

**2. CONTRACTS (§ 261*)—BREACH—FORFEITURE.**

The contract providing that, if plaintiff should fail to pay defendants a monthly average of a certain sum, the contract might be canceled by defendants, defendants could not breach their contract limiting them to the use of a certain number of pages for their own purposes and use or sell a number greatly in excess therefor, so that the amount they owed plaintiff for the excess space so improperly used or sold, together with plaintiff's monthly payments, would make plaintiff's monthly payments exceed the specified amount, and at the same time declare plaintiff in default for not paying the required amount, and declare his rights under the contract forfeited.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 261.*]

**3. INJUNCTION (§ 59*)—BREACH OF CONTRACT—MUTUALITY.**

A contract for sale of exclusive advertising privileges with certain reservations was signed by both parties, and purported to bind them alike. The buyer agreed to open an office, furnish as many pages of advertising as he could secure orders for, and to pay the expenses incurred by him 'under the contract. The contract was also based upon a settlement of a controversy existing under a prior contract. *Held*, that the contract was mutual, and the buyer could restrain the sellers from using more of the advertising space for themselves and for sale to others than the contract allowed them, which interfered with the buyer's rights under the contract.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 114–116, 128; Dec. Dig. § 59.*]

Appeal from Judgment on Report of Referee.

Action by Frederic W. Gardner against the Roycrofters and another. Judgment for plaintiff, and defendants appeal. Affirmed.

This is an appeal by the defendants from a judgment of the Supreme Court entered in Erie county upon the report of a ·referee, awarding $16,808.61 damages to the plaintiff on account of the defendant's breach of contract, and restraining the defendants from doing certain acts. The contract, dated March 20, 1903, recites that the parties of the first part, the defendants, are the owners and have the right to sell the exclusive advertising privileges of the publications known as "The Philistine" and "Little Journeys," and that the party of the second part, the plaintiff, is desirous of purchasing the same, and in consideration of a dollar, and other valuable considerations thereinafter named, the parties of the first part grant and sell to the party of the second part such exclusive privileges, the party of the second part agreeing to pay at the rate of $40 per page per month in each publication, less 5 per cent. discount for cash, on the first days of each month "for as many pages as the party of the second part can secure orders for." The defendants reserved unto themselves for the exploitation of their own products and for exchange railroad advertising not to exceed 16 pages in the "The Philistine" and 8 pages in the "Little Journeys" and agreed to turn over to the plaintiff all cash advertising contracts in existence, and in the future to refer all correspondence, questions, and inquiries requiring advertisements to the plaintiff, the defendants, however, having the right to reject any copy which they deemed detrimental to either of such editions. The plaintiff was to open and bear the expense of an office and pay his traveling expenses, and was to furnish all printed matter, circulars, envelopes, letter heads, etc., necessary in his opinion to carry out the terms of the contract, the defendants, however, to allow him towards expenses 10 per cent. of all monthly sums remitted under the terms of the contract, to be deducted before remittance. It was further

agreed between the parties that, if during any four successive months the plaintiff failed to pay to the defendants a monthly average of at least $500 (cash discounts and advertising allowances not to be considered), the advertising privileges and all rights under the contract may be canceled and purchased by the defendant for $1. The defendant Hubbard, when convenient for him, was to assist the plaintiff in the preparation of copy for advertising, and was to write and prepare advertisements for the advertisers and for other orders placed when convenient for him so to do. It was further understood that the plaintiff was to have all the advertising space in the body of "The Philistine" and in the "Little Journeys" that he wants, and will pay for as therein provided.

It was further agreed that, in the event in any month the plaintiff failed to send 16 pages of advertising matter for "The Philistine" and 6 pages for the "Little Journeys," then and in such case in the issue of such month the defendants have the right to use "for exchange advertising for merchandise to be sold, at the rate of $100 per page in each magazine," the difference between what is furnished by the plaintiff and the said 16 pages in "The Philistine" and 6 pages in the "Little Journeys," that no exchange advertising will be solicited or exploited for such magazine. The contract was to become null upon the death of the plaintiff or the said Hubbard. Prior to the execution of this contract, another contract of somewhat similar terms had existed between the parties. Disputes and controversies having arisen as to the rights of the parties thereunder, this contract was made as a settlement and adjustment of such disputes. The referee found that the defendants had violated the contract in most material respects; that they printed in the magazines more of their own advertisements than authorized by the contract; that they have solicited and obtained merchandise advertisements for their own benefit beyond the amount permitted by the contract, and in various other respects disregarded the terms of the contract, and its violation tended to lessen and destroy the plaintiff's property rights in the contract.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Kenefick, Cooke & Mitchell (James McCormick Mitchell, of counsel), for appellants.

Bissell & Riley (George C. Riley, of counsel), for respondent.

JOHN M. KELLOGG, J. The appellant relies upon three objections to the judgment: (1) That the referee adopted an erroneous measure of damages; (2) that the evidence shows that defendants canceled the contract under the provision therein permitting such cancellation; (3) that the injunctive provisions of the judgment are unauthorized.

By the contract the defendants deprived themselves of the right of publishing advertisements of their own products, or for others than the plaintiff, in their magazines beyond the space reserved by the terms of the contract, and they could not lawfully use either magazine for such purpose without contracting with and settling with the plaintiff therefor. Nevertheless, as publishers of the magazines they had the physical power to insert advertisements without the plaintiff's consent. They knew the only price at which space in the magazine was sold and the stipulated price for exchange merchandise advertisements, and, with such knowledge, elected to use such space, and, when plaintiff asks them to pay for the same, they are not in a position to deny that they occupied the space upon the usual terms. They cannot rely upon their own wrong to deprive the plaintiff of the price which

similar advertisements paid. If A. puts upon the market a commodity at a fixed price, and B., knowing the price, requests the commodity for his use, or takes it without a request, he fairly becomes obligated to pay the price. A request for such an article, or the taking without request, carries with it an implied promise to pay the known market price. The referee was therefore right in charging the excess space used or ordered by the defendants at the rates the plaintiff uniformly received for similar space, less the amount the defendant was to receive per page under the contract.

These conclusions necessarily dispose of the second objection. If the defendants had paid or accounted to the plaintiff for the excess space which they improperly used or sold each month, the proceeds thereof, with the plaintiff's monthly payments, would have made the payment in each month in question exceed $500. While the defendants owe the plaintiff under the contract for space, they cannot declare him in default for not paying moneys of a like amount. The various violations of the contract by the defendants had a tendency to prevent the plaintiff from obtaining advertisements which he otherwise might have obtained, and tended to and were probably designed to put the plaintiff in default so that a forfeiture might be declared. The defendants cannot by breach of contract create a condition which naturally brings plaintiff into default, and then declare that the plaintiff under the contract has forfeited all rights by reason of the default which their acts have caused.

Under their third objection the defendants contend that there is not such a mutuality of contract and remedy as to enable the plaintiff to have a specific performance of the contract (Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454), and that the same rule applies to injunctive relief. The contract is signed by both parties, and purports to bind them alike. The plaintiff agreed to open an office, furnish as many pages of advertising as he could secure orders for, and to pay the expenses incurred by him under the contract. The contract was also based upon a settlement of a controversy existing under a prior contract. It is not unilateral, but mutual, the full performance of which has been entered upon by the parties and carried out for years, and the plaintiff at all times has been in full and active performance of every obligation expressed in or fairly implied by it, and has established a valuable business thereunder. He is therefore in a position to ask the court during his continued performance to prevent the defendants from destroying his rights under the contract by restraining them from doing acts which by its terms they have agreed not to do. 2 Pom. Eq. Rem. § 775. The contract does not now rest in promises. It recites that the parties of the first part have the right to sell the exclusive advertising privileges of the publications, and that the party of the second part desires to buy them, and that the party of the first part grants and sells them to the other party. It speaks of the advertising department of the magazines. Under certain conditions the advertising privileges and all rights under the contract may be canceled by the party of the second part and purchased by them for one dollar. The magazines represent a valuable business enterprise. The defendants are the actual owners, and conduct the editorial and publishing part of the

business. The plaintiff has the exclusive right, subject to certain reservations, to the advertising space or privileges of the magazines, and has spent many years in developing that part of the business, and it is a valuable property right. The right to publish these magazines is a property right of the defendants, and the exclusive right to control the advertising department is a property right of the plaintiff. The parties, so far as the advertising department of the magazines is concerned, are conducting it upon a kind of joint account plan. The defendants give life and value to the advertising department by reason of the readable qualities of the magazines and the manner in which they are published. The plaintiff, having the exclusive control of the advertising department, obtains advertisers and receives the entire proceeds thereof, less the per-page amount which the defendants are to receive. In many magazines the advertising department is the real revenue earner.

It is not necessary to go into refinements to determine what the exact relations of the plaintiff to the magazines are. It is sufficient to know that he has the exclusive right to the advertising space subject to the contract reservations, and that the selling of that space is his business created by the contract and his acts thereunder, and that the defendants are wrongfully interfering with his business and lessening his property rights therein. A court of equity finds a remedy adequate to every wrong, where the injured party cannot obtain full redress elsewhere, and where a multiplicity of suits to enforce imperfect remedies must otherwise follow. It may, without attempting to define all of the respective rights and obligations of the parties under this complicated situation, view the transaction as the defendants viewed it when they stated that they were by it selling and granting to the plaintiff the exclusive advertising privileges of the magazines, and may restrain them from doing the acts which they have agreed not to do which interfere with the plaintiff's right in said business. The trial court held that this is not a case for a specific performance, but that in the respects covered by the injunction the defendants might be restrained from interfering with the plaintiff's rights under the contract. The findings of fact are fairly sustained by the evidence, and the conclusions of law do not err to the prejudice of the defendants.

The judgment should therefore be affirmed, with costs. All concur; SEWELL, J., in result.