(76 Misc. Rep. 71.)

### HALL v. HYLE et al.

(Supreme Court, Trial Term, Monroe County. March, 1912.)

1. FRAUDS, STATUTE OF (§ 116*)—INTEREST IN REAL PROPERTY—LEASE FOR THREE YEARS.

   A written instrument under seal, reciting that it was between the deceased as grantee of the premises at foreclosure sale, her heirs, and administrators, by the mortgagee, as party of the first part, and plaintiff, as party of the second part, purporting to lease the premises, and including an option for their purchase by plaintiff within not to exceed three years from its date, signed by the mortgagee as an individual, and by the plaintiff, the mortgagee having no written authority to make the contract, is a lease for three years, and in violation of Laws 1896, c. 547,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

§ 207, then in force, providing that an estate or interest in real property, other than a, lease for not exceeding one year, cannot be created by an agent, unless the agent had written authority therefor.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 251–260; Dec. Dig. § 116.*]

2. TRUSTS (§ 74*)—CREATION—RESULTING TRUST.

Where, at foreclosure sale, the premises were conveyed to a sister of the mortgagee to defeat the inchoate dower interest of his wife, and thereafter and until his death his sister and her daughters permitted him to collect and receive the rents to his own use and benefit, but there was nothing to show that he retained any other interest, or that a reconveyance was contemplated or agreed to, there was no resulting trust in his favor, and he could not require a reconveyance.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 105, 106; Dec. Dig. § 74.*]

3. SPECIFIC PERFORMANCE (§ 119*)—PROCEEDINGS—BURDEN OF PROOF.

Where, at foreclosure sale, the premises were conveyed to a sister of the mortgagee to defeat the inchoate dower interest of his wife, and he thereafter, without written authority, executed a lease on behalf of his sister and her heirs, with an option to the lessee to purchase if such contract were binding, the burden was on the lessee to establish that he exercised his option within the time stipulated, or that the time was continued, and that his rights thereunder had not lapsed.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 382, 383; Dec. Dig. § 119.*]

4. SPECIFIC PERFORMANCE (§ 121*)—PROCEEDINGS—SUFFICIENCY OF EVIDENCE.

In an action for specific performance, evidence *held* not to justify a finding that the option had been merged into a binding contract by acceptance or extension, or that plaintiff was entitled to specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

Action by George A. Hall against Edward C. Hyle and others. Judgment for defendants.

S. D. Bentley, for plaintiff.
Edward C. Hyle, for defendants.

SAWYER, J. [†] This action is based upon a contract under seal, dated July 9, 1904, which recites that it is between Sarah A. Fox, her heirs, and administrators by Joseph G. Sherman of the first part, and George A. Hall (this plaintiff) of the second part, and is signed by Joseph G. Sherman in his individual name and George A. Hall, respectively. It purports to lease certain premises in the city of Rochester, and also includes an option for their purchase by Mr. Hall upon certain terms and conditions within a time "which shall not exceed three years from the date of this lease."

It appears that upon the 1st day of May, 1879, the premises in question were sold by the sheriff of Monroe county upon foreclosure of a mortgage held against them by the said Joseph G. Sherman; that, upon such sale, they were bid in by Mr. Sherman, who paid the consideration therefor; and that under his direction the sheriff deeded them to his sister, Sarah A. Fox. Mrs. Fox died intestate upon the

21st day of June, 1898, without having conveyed them away, and leaving her surviving two daughters, the defendants, Lilia F. Campbell and Nettie F. Wallace, and no administrator of her estate has been appointed. Mr. Sherman died September 26, 1910, leaving a last will and testament by which, after certain minor legacies, he gave and devised his entire property unto the defendants Lilia F. Campbell and Nettie F. Wallace. He had separated from his wife in 1876, and in the year 1887, in the state of Minnesota, procured from her a divorce based upon the ground of abandonment, the process in the action therefor being served upon her by publication. This wife, Anna L. Sherman, who survived her husband and was living at the time of the trial of this action, on or about the 24th day of February, 1911, executed and delivered a release of her dower right in the premises to the defendant Hyle, to whom on September 21, 1910, the defendants Campbell and Wallace had conveyed them in trust for certain purposes in the deed of conveyance set out. Plaintiff now brings this action for specific performance.

The contract in its body purports to have been made by Sarah A. Fox, her heirs, and administrators by Joseph G. Sherman. Mrs. Fox had at its date been dead for some years, and no administrator of her estate had been appointed. Her heirs were the defendants Lilia F. Campbell and Nettie F. Wallace, and, had it been signed in their names by Mr. Sherman, or signed by him in any other way indicating his signature to be for them, I have no doubt but that it would be held to be sufficient upon its face to bind them. The describing them as the heirs of Mrs. Fox would, in an equity action, be held as equivalent to mentioning them by name. The instrument is under seal, and the fact that Mr. Sherman subscribed it in his own name and without the addition of any words indicating that such subscription was not upon his own account, or as agent for the parties described as the makers of the instrument, possibly may, notwithstanding its recital, relieve it of force and effect as against the heirs of Mrs. Fox, and constitute it, if anything, only a contract upon the part of Mr. Sherman individually. Passing that, I shall for the present assume that the form of the paper and the method of its execution are together sufficient to constitute it, if authorized, their contract, and not that of Mr. Sherman. It is not pretended that Mr. Sherman had any written authority for the making of the contract in question. Section 207 of chapter 547 of the Laws of 1896, providing that an estate or an interest in real property, other than a lease for not exceeding one year, could not be created by an agent unless such agent had written authority therefor, was then in force, and is to be strictly followed. Larkin v. Radosta, 119 App. Div. 515, 104 N. Y. Supp. 165. The lease in question, while somewhat obscure, must, it seems to me, be construed as one for three years from its date, and is therefore squarely in violation of the statute.

[2] Plaintiff contends, however, that, if so, the option does not fall; that an option for purchase of real estate is not within the prohibition of the section; and that such an option made in writing by an agent having only verbal authority therefor is valid and binding

upon the principal. Many cases to sustain this position are cited in plaintiff's brief and such seems to have been the holding. Worrall v. Munn, 5 N. Y. 229, 55 Am. Dec. 330. These cases have been much discussed in later years and in many respects limited in their scope (Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. [N. S.] 251; Peterson v. City of New York, 194 N. Y. 437, 87 N. E. 772, but nowhere that I can learn has the proposition that a valid written option may be executed by an agent having only parol authority been disturbed or even criticised. The Worrall Case, supra, was disposed of under exactly similar statutory prohibition, for section 207 above referred to is but a re-enactment of sections 6 and 7 of title I, part 2 and chapter 7 of the Revised Statutes.

Whether an option for the purchase of real estate contained in a written lease, void under the statute, can be upheld as a separate and simple contract, I do not attempt to determine, for no option given by an agent can be enforced unless there is some authority for it either written or verbal, or else some act of ratification or estoppel upon the part of those sought to be charged. As to what was done with this property, or what authority was exercised over it by Mr. Sherman from the time of the deed to Mrs. Fox to 1904, is not divulged by the evidence, except that it appears that at one time Mrs. Fox engaged in a litigation to set aside a tax conveyance which had been made of it, and that one Bradley for some years collected its rents, presumably, under Sherman's direction. From his acts subsequent to 1904 and the general history of the property, it is probable, however, that throughout her lifetime and thereafter until 1904 he, in a general way, looked after it, saw to the payment of its taxes, its repairs, renting and the collecting of its rents.

From 1904 it is undisputed that its management was left entirely in his hands. The defendants never appeared in the dealings with plaintiff nor came to the place. He made and executed the lease under which Mr. Hall entered into possession. He visited the premises thereafter with more or less frequency, observed the repairs and betterments that Mr. Hall made, collected the rents, gave receipts therefor over his own signature certifying in all but two instances that the moneys paid were for rent, provided for the payment of taxes, and apparently had its sole supervision until his death. Upon one occasion in March, 1910, Mrs. Campbell wrote to plaintiff that Mr. Sherman was sick at her home in Niagara Falls and needed money, with the request that it be sent. Mr. Hall thereupon sent a certain sum to him and subsequently received therefor his receipt, which is in evidence. Later, and in August, 1910, plaintiff called upon the defendant Campbell at her home in Niagara Falls, inquired for Mr. Sherman, telling her he had made arrangements to sell the place under a privilege that Mr. Sherman had given him when he last saw him, asked her if Mr. Sherman had the whole handling of the place, and what he did was legal and all right. She replied that it was all right; that he had the handling, and could do with the place as he saw fit. She also added that she could do nothing about it, had no authority, and had nothing to do in regard to it.

In the year 1905 the witness Grimes overheard a conversation between Mr. Sherman and the defendants Wallace and Campbell, in which they were told by Sherman that he had been to Hall's to see him about the property. From these and other evidential facts it must be held that some of his acts were with the knowledge and direction of the owners, and they are bound by all done within the scope of his apparent authority, except as relieved therefrom by statute. Such authority as he had being purely verbal, the defendants were not bound by the lease in question because it was for more than one year, and, even if knowledge of the fact that it was for three years had come to them (of which there is no proof), their acceptance of the rent and failure to disavow it was not a ratification thereof, nor alone an estoppel. Larkin v. Radosta, supra.

That they knew that Mr. Hall had rented and lived in the property for a number of years is fairly well proven, but that they had any information that he had repaired and bettered it at considerable expense to himself, or any knowledge that he was a tenant other than from year to year, or that he had or claimed to have an option for its purchase, is not shown; nor is it shown that at any time, either by writing or by word of mouth, by other permitted similar transactions, or in any manner, Mr. Sherman had been given authority to sell this or any other of defendants' real estate, or had been given or apparently had any except the simple authority to manage, rent, and collect the rents. The fact that more than six years after the making of this contract Mrs. Campbell, in response to his statement that Mr. Sherman had given him the privilege of selling the place the last time he saw him, told plaintiff that he had the whole handling and could do with the place as he saw fit, does not prove to my mind that when the option was made he had authority to make it, nor operate as a ratification thereof; nor does such statement estop her from disavowing it and the alleged contract for its sale growing out of it. There being no proof of authorization, express or implied, to make the option of sale under consideration, nor any proof of its ratification or of acts constituting an estoppel, defendants are not bound thereby, and specific performance cannot be decreed.

Returning to the contract itself, if it be true that the conveyance to Mrs. Fox was for the use of Mr. Sherman, and that as between themselves he was the actual owner of the property, and that, though insufficient in form to bind the heirs of Mrs. Fox, the instrument could be upheld and enforced as his individual contract, the defendants' rights would rest upon an entirely different foundation. Although they are the heirs of Mrs. Fox, the defendants Campbell and Wallace are also the devisees of Mr. Sherman, and his property would come to them through his will subject to whatever enforceable rights or equities might exist against it. Their conveyance to the defendant Hyle, as a trustee, being as admitted only in furtherance of a plan for the division of Mr. Sherman's estate, would carry the title subject to the same rights and equities.

It is evident that the conveyance to Mrs. Fox was for the understood purpose of defeating the inchoate dower interest of Mr. Sher-

man's wife in the lands, and that thereafter, down to the time of his death, Mrs. Fox and her heirs, the defendants Campbell and Wallace, permitted Mr. Sherman to manage the property as he chose, and to collect and receive for his own use and benefit the rents thereof. There is, however, in the evidence nothing to show that he retained any other interest or that it was ever contemplated or agreed that the parties in whose name the record title stood would convey at his demand or convenience. Under the circumstances here displayed no resulting trust would attach nor could Mr. Sherman in a court of equity have procured a reconveyance to himself. It is difficult to see, therefore, how one holding an option from him individually can obtain what he could not.

His hands were unclean, and plaintiff, claiming under him, is subject to his consequent disability. Satterly v. Dewick, 129 App. Div. 701, 114 N. Y. Supp. 354.

[3] Were this otherwise, the plaintiff still cannot rightfully invoke the power of the court to decree specific performance. Conceding that the contract may be upheld as that of Mr. Sherman personally, and is capable of enforcement as against these defendants upon the theory that the title of defendants rests upon his will and is subject to plaintiff's equities, the burden still rests upon plaintiff to establish either by direct evidence or by facts from which the inference may properly be drawn that he exercised his option within the time and manner stipulated, or else that his time in which to do so was so continued that his rights thereunder have not lapsed.

[4] This testimony has been carefully studied in the light of the argument and explanations advanced by plaintiff's counsel, and while there are some facts which, standing alone, might point toward the requisite action upon plaintiff's part, yet, taking the case together, I am unable to find that the option has been merged into a binding contract by acceptance or an agreement for the extension thereof had, and, if this be the true determination, then, no matter what the method of dealing between the parties, this particular action for specific performance must fail. Pomeroy v. Newell, 117 App. Div. 800, 102 N. Y. Supp. 1098.

As I read the contract, in order for plaintiff to avail himself of its option, acceptance thereof was required within three years, when the rent theretofore paid was to be applied upon the purchase price, and a sufficient additional sum paid to constitute a principal payment equal to $1,000 and interest upon the unpaid principal. The evidence is that no written acceptance was ever given to Mr. Sherman, and there is no evidence of a verbal acceptance, unless same may be inferred from what was done. Neither is there evidence of acceptance by compliance with the stipulated conditions of payment. On the 9th day of July, when the option expired, there had only been paid $630, whereas, if the rent had been met as required by the contract, Mr. Sherman would have then already received to apply upon the purchase price $900, leaving only $100 and the accrued interest to be then paid under the option.

There is no attempt to show that the deficiency of $270, the addi-

tional sum of $100, or the interest upon the unpaid principal were then, or at any other time, paid; on the contrary, an examination of Mr. Hall's payments shows that he never from 1904 until the date of the last receipt in June, 1910, paid when due and in full the sums stipulated in his contract as of rent, and there is no pretense of any such payment as was required to make a valid acceptance of the option. If it be admitted that he at some time told Mr. Sherman that he accepted the option, it needs no citation of authorities to sustain the proposition that such statement was insufficient to transform the option into a binding contract. When an option is accepted, it must, in order to constitute a contract, be accepted according to its terms and compliance had therewith; otherwise it remains purely unilateral and incapable of enforcement.

I do not overlook the fact that counsel for plaintiff in his brief builds the sum paid to an amount equal to that owing at the time of Mr. Sherman's death, but the difficulty is that he has included certain items which Mr. Hall was required to pay, outside the rent, as a consideration of his leasehold interest, and deducting those the total payment amounted only to $1,247, a much less sum than was due. The case is likewise devoid of proof that the bond and mortgage for the deferred principal were offered or a deed demanded. It is unfortunately probable that plaintiff permitted his business affairs to run along without strict attention, and that, relying upon the expectation that the option would be some time exercised and the property eventually his, he had, from time to time, used considerable sums of money in repairs and betterments. If there was a reasonable amount of additional evidence, the changes and repairs made at his own expense would be useful in establishing the fact that the option had been exercised. Standing alone, and especially in view of the failure of payments, they cannot be held sufficient for that purpose.

The testimony of Miss Grimes, of Mr. Coughlin, and Mr. Bradley, to the effect that at different times Mr. Sherman stated that he had disposed of the property, that he considered the property sold to Mr. Hall, and that they were trying to fix the matter up, is as consistent with the theory that the option had not been exercised as with the theory that it had. At the most, it proves that Mr. Sherman expected it, sooner or later, would be exercised, and intended to carry out his bargain, even though the stipulated time had expired. The plaintiff has the burden of proof, and there must be something beside evidence which is actually susceptible of either interpretation to sustain that burden. Neither does that testimony operate as proof that the time of fulfillment had been extended by agreement of the parties. Such claim is surely met by the receipts given which in every instance save those of July 6, 1908, and April 6, 1910, expressly refer to the lease or to rent. The argumentative force of the phraseology of the two exceptions is destroyed by the fact that those following return to the previous form, showing that the parties used the changed expression in the same sense and not with the meaning now sought to be attached.

Proof of the acceptance of the option not being had plaintiff cannot recover, either upon the theory that the contract bound the heirs of Mrs. Fox, or that the ownership was in Mr. Sherman, and therefore binding upon his devisees.

Some 300 pages of typewritten brief, calling the attention of the court to at least twice that number of adjudicated cases, supposed to have useful bearing upon this litigation, have been submitted and painstakingly considered, but, in view of the foregoing conclusions, none other of the many points argued or decisions cited requires discussion herein.

Judgment for defendants.