### FOX et al. v. HAWKINS.

(Supreme Court, Appellate Division, Second Department. May 1, 1912.)

FRAUDS, STATUTE OF (§ 103*)—CONTRACT—OFFER—ORAL ACCEPTANCE.

A written offer, to sell one's interest in land, subscribed by his authorized agent, without any time limitation for its acceptance and orally accepted prior to any revocation of its terms, became a binding contract; the oral acceptance being sufficient within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 192–198, 200–208; Dec. Dig. § 103.*]

Appeal from Special Term, Suffolk County.

Action by Catherine Fox and others against Samuel N. Hawkins. From a judgment dismissing the complaint on its merits, plaintiffs appeal. Reversed and remanded for retrial.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

Paul D. Judge (John V. Judge, of New York City, on the brief), for appellants.

William M. Moore, of Brooklyn, for respondent.

HIRSCHBERG, J. The plaintiffs are the heirs at law of one Ellen Picard, who died intestate August 27, 1898, seised of certain real estate in Suffolk county, which real estate is subject to the lien of a tax deed held by the defendant. In September, 1908, the plaintiffs' attorney, duly authorized, wrote the defendant a letter, asking the price for which the defendant would execute a quitclaim deed of said property. The defendant answered by letter, dated September 10, 1908, stating that his attorney would take the matter up with the plaintiffs' attorney at once. Negotiations and correspondence ensued between the two attorneys, and on March 4, 1909, the defendant's attorney wrote the following letter to the plaintiffs' attorney:

"Brooklyn, N. Y., March 4, 1909.

"Paul D. Judge, Esq., New York City.

"My Dear Sir: In re the Hawkins tax title matter. After my last conversation with you over the telephone, I had a talk with Mr. Hawkins at my earliest convenience and ascertained as to his feelings in the matter of releasing his claim against the land and giving a quitclaim deed for his interest. I told him you submitted a proposition of seventy-five dollars as a consideration. He says that it is not at all customary for people to take less than one hundred dollars for a quitclaim interest under a tax title deed of as long standing as his, and this one hundred dollars he wants free of any expense. I am willing to take twenty-five dollars as a compensation for my services, so if your client is willing to pay one hundred and twenty-five dollars

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

.for the quitclaim deed, I will produce it for you properly executed. Have been waiting for the decision of the Appellate Division in the case of Cone against Lauer, which if it is sustained, will place us in a very strong position to hold this title. So far as I can ascertain, the necessary steps for the creation of a good statutory tax title have been properly taken in this case. Mr. Hawkins, however, prefers to settle it satisfactorily without a prolonged litigation if possible, but on the other hand, refuses to make any unusual concessions. Awaiting the favor of your response,

"I am very respectfully yours,        John A. Bowen."

The defendant testified that he authorized Mr. Bowen to make the offer of $125 contained in the letter of March 4, 1909, and that said sum of money would have been acceptable to him at the time that letter was written. On August 10, 1909, the plaintiffs' attorney called the defendant's attorney on the telephone and offered to pay $90 for the quitclaim deed, which offer was refused. The following day the defendant's attorney called at the office of the plaintiffs' attorney. There is some slight dispute regarding what then occurred. The plaintiffs' attorney testified that he offered to pay the $125, that the defendant's attorney agreed to accept the same, and that it was arranged for the plaintiffs' attorney to draw the quitclaim deed, and mail it to the defendant. The latter's attorney testified that he stated that he would have to resubmit the proposition to his client, owing to the lapse of time since the offer to sell for $125. The same day that this interview occurred the plaintiffs' attorney prepared the quitclaim deed, and mailed it to the defendant. On the 16th of August, 1909, the defendant's attorney returned the deed unexecuted to the plaintiffs' attorney, with a letter stating that he was sorry that it was impossible for him to control his client, and that it seemed that his client had "changed his mind, and is going to hold the land if possible." "I frankly confess," the letter states, "I was very much surprised to find him in his present mood of mind, and do not see as anything further can be done, but to try the matter out. He authorized me to accept service for him." The plaintiffs thereupon brought this action to compel the defendant to specifically perform his alleged contract by releasing the land from the lien of the tax deed upon payment of $125. The learned Special Term dismissed the complaint on the merits, on the ground that the alleged contract, having been signed only on behalf of the vendor, was unenforceable in equity through lack of mutuality of obligation and remedy, and cited Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251, as authority for its decision.

I am of the opinion that the learned Special Term has erred. Doubtless the case might have been decided in favor of the defendant on the ground of laches, but not for want of mutuality. The letter of March 4, 1909, was an offer to sell for $125, duly subscribed by the lawfully authorized agent of the defendant. It fully complied with the requirements of the statute of frauds. It contained no time limitation for its acceptance, and there is no evidence or claim that its offer was withdrawn prior to the oral acceptance by the plaintiffs' attorney in August, 1909. The offer to sell for $125 became a contract binding upon the defendant upon its acceptance by the plaintiffs prior

to any revocation of its terms.  B. & M. R. R. Co. v. Bartlett, 3 Cush. (Mass.) 224.  When the written offer, as in the case at bar, contains all the essential terms of a binding contract, an oral acceptance is sufficient within the statute of frauds, and the resulting contract may be enforced against the party by or on whose behalf the offer was made.  Pettibone v. Moore, 75 Hun, 461, 27 N. Y. Supp. 455; Justice v. Lang, 42 N. Y. 494, 1 Am. Rep. 576; Mason v. Decker, 72 N. Y. 595, 28 Am. Rep. 190; Jones v. Barnes, 105 App. Div. 287, 290, 94 N. Y. Supp. 695; Fry on Spec. Perf. § 181; Pomeroy on Spec. Perf. § 76.

These well-settled principles have not been changed by the Court of Appeals in the recent cases of Wadick v. Mace, 191 N. Y. 1, 83 N. E. 571, and Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251, relied upon by the respondent.  The features distinguishing those cases from such a case as that at bar were stated by Mr. Justice Burr in Carney v. Pendleton, 139 App. Div. 152, 123 N. Y. Supp. 738, wherein it was held that, where a written valid option to sell real estate within a certain time is orally accepted within the time, the agreement becomes mutual, and may be specifically enforced.  Mr. Justice Burr said (139 App. Div. 153, 123 N. Y. Supp. 739):

"It is undoubtedly the general rule that, to warrant a decree for specific performance, the contract must be mutual in its obligations and in its remedy. 4 Pom. Eq. Jur. (3d Ed.) § 1405; Palmer v. Gould, 144 N. Y. 671, 39 N. E. 378; Stokes v. Stokes, 148 N. Y. 708, 43 N. E. 211.  But it has been generally supposed that where the owner of property for a consideration gave to another an agreement in writing, signed by him, to the effect that within a specified time he would sell such property, describing it, at a price named, and within such time the person to whom the agreement was given determined to avail himself of the offer, and so notified the maker thereof and demanded performance, such agreement became mutual, and was enforceable.  Jones v. Barnes, 105 App. Div. 287, 94 N. Y. Supp. 695; Pettibone v. Moore, 75 Hun, 461, 27 N. Y. Supp. 455; Boston & Maine Railroad v. Bartlett, 3 Cush. (Mass.) 224.  The learned counsel for the respondents claim, and the learned trial court seems to have held, that by two recent decisions of the Court of Appeals this well-established rule had been overthrown.  Wadick v. Mace, 191 N. Y. 1, 83 N. E. 571; Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251.  We do not so understand them.  In Wadick v. Mace, supra, the decision was put upon the ground that it affirmatively appeared from the written instrument that the remedy of specific performance was expressly waived, and in Levin v. Dietz, supra, the decision was put upon the ground that there had been no acceptance of the vendor's promise to perform until after the promise had been withdrawn."

It follows that the judgment must be reversed, but as the defendant may possibly be able to prove that the offer was withdrawn prior to its acceptance, or as it may appear that in the circumstances the acceptance was unreasonably delayed, the case must be retried.

Judgment reversed and new trial granted, costs to abide the final award of costs.  All concur.