(79 Misc. Rep. 93.)

## STEWART v. GILLETT.

(Supreme Court, Equity Term, Allegany County. January, 1913.)

1. VENDOR AND PURCHASER (§ 16*)—CONTRACT TO CONVEY—ACCEPTED OFFER.
     Where a written offer to sell land was duly accepted and performance tendered by the purchaser before its withdrawal, the accepted offer became a contract binding on the vendor.
     [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

2. VENDOR AND PURCHASER (§ 82*)—CONTRACT TO CONVEY LAND—BINDING EFFECT.
     A vendor was not relieved from his contract to convey land by a subsequent agreement as to the manner in which the obligations of each party should be performed, or by the fact that the purchaser made an unaccepted compromise proposal.
     [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 138, 139; Dec. Dig. § 82.*]

3. VENDOR AND PURCHASER (§ 175*)—CONTRACT TO CONVEY DOWER—DAMAGES FOR BREACH.
     Where a vendor fails in his agreement to deliver a deed executed by his wife, the purchaser may retain out of the purchase money the present value of the wife's inchoate right of dower in the land.
     [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 360–363; Dec. Dig. § 175.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. VENDOR AND PURCHASER (§ 174*)—BREACH BY VENDOR—DAMAGES TO PURCHASER—RIGHT TO RECOVER.**

Where the vendor, while in default under his agreement to convey, took down and removed a building from the premises, the purchaser was entitled to retain its value out of the purchase money.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 358, 359; Dec. Dig. § 174.*]

**5. VENDOR AND PURCHASER (§ 198*)—BREACH OF CONTRACT TO CONVEY—LIABILITY FOR TAXES.**

Where a vendor while in default of his obligation to perform his contract to convey received the profits from the land, he, and not the purchaser, was chargeable with the taxes for such period.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 408–412; Dec. Dig. § 198.*]

**6. VENDOR AND PURCHASER (§ 174*)—BREACH OF CONTRACT TO CONVEY—RIGHT TO DAMAGES.**

Where a vendor, while in default of his obligation to perform his contract to convey, retained possession, and the purchaser was deprived of the use of the purchase money by reason of it being deposited in a bank pursuant to their agreement until the vendor should perform, the purchaser was entitled to an allowance on the purchase price for the amount of his damages.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 358, 359; Dec. Dig. § 174.*]

**7. VENDOR AND PURCHASER (§ 174*)—BREACH OF CONTRACT TO CONVEY—MEASURE OF DAMAGES.**

The measure of damages in such case for the purchaser's being deprived of the use of the premises was the interest on the purchase money from the time that it was placed at the vendor's disposal.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 358, 359; Dec. Dig. § 174.*]

Action by Allan B. Stewart against Dwight D. Gillett to compel specific performance of a contract for sale of real estate. Judgment for plaintiff.

G. W. Harding, of Hume, and Elba Reynolds, of Belmont, for plaintiff.

D. D. Dickson, of Angelica, for defendant.

BROWN, J. On the 15th day of July, 1910, the plaintiff and defendant entered into an agreement in writing, whereby the defendant gave to the plaintiff an option to purchase from the defendant certain real estate situate in the town of Hume, Allegany county, N. Y.; the plaintiff having 60 days in which to accept the option. In the event the plaintiff should accept said option, he was to pay to the defendant the sum of $2,600 as the purchase price, and, upon receiving such payment, the defendant was to execute and deliver to the plaintiff a good and sufficient full covenant deed of such real estate. On September 9, 1910, the plaintiff went to the defendant's residence with a notary public and a deed as described in the option agreement, stating to the defendant that they had come to close the transaction, and had brought the notary along to acknowledge the deed. The deed was produced, the plaintiff again stating to defendant and defendant's wife that he had come to get the matter closed up, get the deed signed, and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff asked the defendant's wife to sign it, the wife stating that she did not care to do it. The defendant claims that the plaintiff agreed to accept the deed without the signature of his wife, and he states that he thereupon signed the deed, acknowledged its execution before the notary, who thereupon signed the acknowledgment. The plaintiff and the notary claim that the defendant signed the deed and acknowledged its execution before the defendant's wife was asked to sign, and before her refusal. There is some discrepancy as to the narrative of facts occurring after defendant signed and acknowledged the deed. The defendant testified that he refused to deliver the deed to the plaintiff without being paid the purchase price. The plaintiff testified that he told defendant that he had the purchase money in the shape of drafts, and would meet the defendant at the State Bank of Fillmore that afternoon, pay the purchase price, and 'take the deed, provided it was executed by defendant's wife; that the defendant agreed to have his wife with him at the bank. The plaintiff and the defendant did meet at the bank at the appointed time. The defendant's wife refusing to join with her husband in the execution of the deed, it was agreed by the plaintiff and the defendant that the purchase price of $2,600 should be deposited with the cashier of the bank for the defendant, and that the money would be paid to the defendant upon the defendant's delivering to the cashier for the plaintiff a deed signed by himself and wife, approved by the notary. The plaintiff did so deposit such money. The defendant has never furnished such conveyance. The money has since remained on such deposit for defendant. The plaintiff brings this action for specific performance and damages for defendant's default.

[1] The defendant says that, the option being a unilateral agreement with no obligation on the part of the plaintiff, it cannot be specifically enforced by a court of equity, citing Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251. It is not believed that such authority relieves the defendant herein. In that case the giver of the option by failure to appear at time for performance virtually withdrew his offer before acceptance. In that case there was no acceptance before withdrawal of the offer to sell. The offer to sell being given by that defendant without any consideration, he was at liberty to withdraw the same at any time before acceptance. . That case is not authority for the proposition that if the defendant therein had not withdrawn his offer, and the plaintiff had accepted the same, tendered the purchase price and demanded a deed, that the contract would not have become a mutual one and enforceable in equity. It is elementary that an offer or option made without any consideration to uphold it may be withdrawn at any time before acceptance. It is also elementary that an offer duly accepted while the offer is in force constitutes a contract. It is then that the minds of the parties meet, and there springs into existence a mutuality of obligations that completes the contract. This mutuality of obligations constitutes the consideration essential to establish a valid contract, and has always been held to be enforceable in equity. The Court of Appeals in Levin v. Dietz, supra, expressly refused specific performance upon the ground that there was no agreement by the vendees to buy. There was no ac-

ceptance by the vendees of the promise of the vendor except such as was involved in their offer to perform at a time when he had withdrawn from his promise, and that there was no mutuality of obligations.

[2] It cannot be claimed from the transaction on the 9th day of September, 1910, that the defendant Gillett withdrew his offer to sell at any time. The finding must be that the offer to sell remained in full force; that the plaintiff accepted the same, became bound to purchase. The conversation and acts of the parties constitute a performance by the plaintiff of all that he was required to do to cast upon the defendant the burden of making the conveyance. The fact that plaintiff accepted the defendant's offer while it was in force completed the contract. There then existed an obligation on the part of the defendant to sell and convey by a good and sufficient full covenant warranty deed, and an obligation on the part of the plaintiff to pay the sum of $2,600. The conversations and agreement as to the way and manner in which these obligations should be performed did not impair, change, or modify the mutual obligations. The plaintiff was entitled to a conveyance in which the defendant's wife should join as grantor, and the arrangement relative to the deposit of the money for the defendant when he should furnish the deed he had agreed to deliver did not relieve defendant from his obligation. The fact that the plaintiff in October, 1911, proposed to settle the controversy by taking advantage of another form of the proposition as contained in the option agreement and pay $2,200, permitting the defendant to reserve the building on the premises in dispute, which was not acceptable to the defendant, in no way changed the relations of the parties, nor interfered with their rights. The only step taken by the defendant to comply with his obligation being in March, 1911, to request an attorney to prepare a deed, which was never executed, the defendant must be held to be in default, and the plaintiff to be entitled to the relief of having the contract fully performed.

[3] The plaintiff is entitled to a decree that the defendant within 10 days after entry of judgment herein deliver to the cashier of the State Bank of Fillmore a good and sufficient full covenant deed, conveying the premises described in the complaint to the plaintiff. The defendant is 67 years of age, his wife 47. The present value of her inchoate right of dower is $220.74, and, in the event that the defendant fails to deliver such deed executed by his wife, the sum of $220.74 must be deducted from the moneys on deposit in said bank, and that amount repaid to the plaintiff by such cashier.

[4] The building upon the premises, owing to natural causes, was in a dilapidated condition in September, 1910. To preserve it from falling the defendant took down a portion of it, piled a part of the lumber upon the premises, and removed a quantity of the value of $75. The plaintiff is entitled to retain and to be paid out of the moneys deposited this sum of $75.

[5] The defendant has had the use and occupation of the premises since September 9, 1910, and has received the rents, issues, and profits therefrom. The taxes levied and assessed against said premises up

to the delivery of the conveyance hereinbefore provided for must be paid by the defendant.

[6, 7] The plaintiff has been denied the use and occupation of the premises since September 9, 1910. He also has been denied the use of the purchase moneys deposited in the State Bank of Fillmore for the defendant's benefit. His damage for being deprived of the use and occupation of the premises can best be ascertained by allowing him interest on the purchase price from the time he placed it at the disposal of the defendant. It would be unfair to deprive plaintiff of the use of both the purchased premises and the purchase moneys. It is but just and fair for defendant to reimburse the plaintiff for the damage occasioned by failure to convey as he had agreed. Such damage under the circumstances is the interest on $2,600 for two years, four months, and twelve days—the sum of $369.20. Such sum must be deducted from the moneys deposited, and returned to plaintiff.

Let findings in accordance with the foregoing memorandum be prepared. The plaintiff is awarded his costs and disbursements.