ROYAL INDEMNITY COMPANY, Respondent, *v.* ISAAC J. DANZIGER, Appellant, LOUIS SCHNEIDER, Defendant.

(Appellate Term, First Department, November, 1917.)

Indemnity — action on bond given to save harmless plaintiff in replevin on its bond — substitution of obligors in contract of indemnity — effect of seal — judgment for plaintiff reversed.

The evidence in an action brought upon an indemnity agreement under seal to save the plaintiff in an action in replevin harmless from loss on its bond given to the defendant in said action two years before the making of the agreement in suit, considered, and *held,* that a judgment in favor of plaintiff must be reversed on the ground that there was no evidence of any consideration for the defendant's agreement though the one on whose behalf the action in replevin was brought testified that he told said defendant that the plaintiff in replevin wanted him to sign the indemnity agreement in order to relieve the original obligor from liability, there being no evidence that the plaintiff in replevin ever authorized any such statement to be made or ever released the original obligor from the indemnity agreement.

That as there was no evidence that defendant herein had authorized any one to seal the indemnity agreement it did not import a consideration and that the plaintiff herein could not treat the seal as surplusage for the purpose of asserting the validity of the contract and at the same time insist upon it as importing a consideration.

APPEAL by the defendant Danziger from a judgment of the Municipal Court of the city of New York, bor-

Appellate Term, First Department, November, 1917.    [Vol. 101.

ough of Manhattan, first district, in favor of the plaintiff, after a trial by the court without a jury.

Samuel F. Hyman, for appellant.

Frank J. O'Neill (Barnett Cohen, of counsel), for respondent.

ORDWAY, J. This is an action to recover on an indemnity agreement. The facts are substantially as follows: In 1914 an action was brought on behalf of one Baker or Bisgier against the Essanbee Film Company. The action was in replevin and the plaintiff gave its bond to the film company upon the application of Baker. To secure itself from loss on this bond it obtained from one Eisenstein a bond. During the pendency of the replevin action, Eisenstein wished to be released from his bond. He asked Baker to obtain such release. Baker went to the defendant Danziger, his lawyer in the replevin action, and told Danziger that Eisenstein wanted to be relived from his bond, and stated that plaintiff would release him if in addition " to the collateral security which I was willing to put up of $500," Danziger would sign an agreement to hold the plaintiff harmless in the replevin action the same as Eisenstein had done. Danziger was at his home when Baker saw him and Baker had with him and showed Danziger the agreement which he said plaintiff required Danziger to sign in order to release Eisenstein. Danziger said he was ill and would not sign it then, but would be down to his office the next day and would then sign it. The next day Baker went to Danziger's office but he was still at his home. One Hyman, the defendant's present attorney, occupied the office with Danziger. Baker called up Danziger on the

telephone and Danziger told Hyman to sign his (Danziger's) name to the agreement, and he did so. It is upon this agreement that this action is based. Danziger denied authorizing any one to sign his name to this paper as it now appears in evidence. He claims that Baker said he was settling a case with Eisenstein and that the indemnity company wanted the consent of the attorney to some change in the agreement, and that he told Baker he would telephone his office that a consent to such change should be signed. He did not deny having a conversation with Baker at his house or that he communicated with Hyman over the telephone with reference to signing a paper. Hyman says that he read the paper before he signed Danziger's name to it and knew what it was, but that he never received any authority from Danziger to execute an indemnity agreement as such. This statement as to the paper being a " request " for something was disputed by Baker, who testified that Danziger read the paper and knew all about it.

On these facts the learned trial justice decided in favor of the plaintiff, and we must assume that he believed Baker, since the credibility of the witnesses as to the question of fact involved was clearly for the learned justice to decide. Nevertheless, the judgment must be reversed, as there is no evidence in the case of any consideration for Danziger's agreement. It is true that Baker testifies that he told Danziger that the plaintiff wanted Danziger to sign the indemnity agreement in order to relieve Eisenstein from his indemnity agreement, but there is no evidence whatever that the plaintiff authorized Baker to make any such statement, or that the plaintiff ever released Eisenstein from his indemnity agreement. The respondent claims that even though there is no evidence that Eisenstein was actually released, there was a novation and accept-

ance by the plaintiff of Danziger in place of Eisenstein, but there is no evidence to that effect in the record. In fact, there is no evidence in the record that the plaintiff had anything to do with the transaction, or knew anything about it, except that it has physically received the agreement in suit (which does not even recite Eisenstein's release), and is now seeking to enforce it, which is not sufficient. *Levin* v. *Dietz,* 194 N. Y. 376. It is true that the agreement does recite a sufficient consideration, namely, the giving of the replevin bond, but it is conceded that the bond was given some two years before the agreement in suit was signed, and no claim is made that the giving of the bond could be the consideration for the agreement in suit.

As the agreement in suit is under seal, it would import a consideration if it appeared that Danziger had duly authorized Hyman to seal the instrument, but there is no such evidence, and it is still the law of this state " that between private parties, authority to execute a contract under seal must be conferred by an instrument under seal." *Peterson* v. *City of New York,* 194 N. Y. 437, 440. It is true, as claimed by the respondent, that the seal in this case is surplusage, and that where an agent, authorized to execute a simple contract only, unnecessarily attaches a seal to the instrument executed by him, which would be good as a simple contract, the seal may be treated as surplusage, and the validity of the contract be in no way affected by it, although the authority was not under seal, but was conferred merely by parol. *Worrall* v. *Munn,* 5 N. Y. 229; *Wood* v. *Wise,* 153 App. Div. 223. But in such cases the principal will not be bound by such an instrument as a sealed instrument. The respondent cannot treat the seal as surplusage for the purpose of asserting the validity of the contract, and

at the same time insist upon it as importing consideration.

BIJUR and PHILBIN, JJ., concur.

Judgment reversed and new trial ordered, with thirty dollars costs to appellant to abide event.