JACOB C. COOK, as Administrator, etc., of CLARISSA COOK, Deceased, Respondent, v. SANDY CASLER, as Sole Surviving Executor, etc., of JOSIAH SNELL, Deceased, and ALFRED W. SHULL, Appellants.

*Equity — it will not specifically enforce an agreement which does not impose mutual obligations — a tender of a bond by a party not obligated to give it does not impose an obligation on the other party to an agreement — surrender of the obligation should be required in a judgment for specific performance — when a dismissal of one cause of action carries costs.*

Equity will not enforce an agreement unless it is founded upon a valuable consideration and is mutual in its obligation and in its remedy. (Per PARKER, P. J., and SMITH, J.)

Shull and Snell having given notes for $4,000 to be paid when they should be "relieved or discharged from their obligation on a certain indemnity bond which they had signed as surety for one Cook," entered into an agreement with Cook to the effect that "the said Shull and Snell agreed with the plaintiff (Cook) that if the said plaintiff would procure and give to them a surety company bond in the sum of $10,000 in the form required by their counsel, Mr. Nellis, to protect them against loss on their said bond given to said bank, that then they would pay said $4,000 unpaid on their said obligations, with four per cent interest."

*Held*, that such agreement imposed no obligation upon the plaintiff, and was, therefore, a mere *nudum pactum* as to the said Shull and Snell (per PARKER, P. J., and SMITH, J.);

That a tender by the plaintiff, two months after the making of such contract, of such a bond as was mentioned in the agreement, did not impose any obligation on Shull and Snell to accept it and pay such $4,000, nor was the plaintiff in such case, in the event of the refusal of Shull and Snell to accept the bond and pay over the money, entitled to maintain an action for the specific performance of the contract. (Per PARKER, P. J., and SMITH, J.)

*Semble*, that, in any event, any judgment directing Shull and Snell to specifically perform the contract should provide for the surrender to them of "their said obligations," referred to in the agreement. (Per PARKER, P. J., and SMITH, J.)

The dismissal of a cause of action, on the ground that it is barred by a judgment rendered in a former action, is a decision on the merits and not a mere nonsuit, and entitles the successful party to costs. (Per PARKER, P. J., and SMITH, J.)

CHASE and CHESTER, JJ., concurred in result; HOUGHTON, J., dissented.

APPEAL by the defendants, Sandy Casler, as sole surviving executor, etc., of Josiah Snell, deceased, and another, from certain portions of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Montgomery on the 13th day of March, 1903, upon the decision of the court, rendered after a trial at the Montgomery Trial Term, certain questions of fact having been submitted to the jury.

*Benjamin F. Spraker*, for the appellant Casler.

*Andrew J. Nellis*, for the appellant Shull.

*W. H. Van Steenbergh* and *Henry V. Borst*, for the respondent.

PARKER, P. J.:

When this action was before us on a former appeal we held that the cause of action first set forth in the complaint was barred by a prior judgment. As to the second cause of action therein, the judgment then before us was rendered as in a common-law action to recover damages for the breach of a contract, and we reversed it and ordered a new trial for the reason that the recovery of $4,000 and interest, permitted by the trial court, was based upon an improper measure of damages for such a breach. (See 76 App. Div. 279.) Upon this second trial the complaint as to the first cause of action was dismissed. No error is now claimed by the plaintiff as to that decision. As to the second cause of action, the plaintiff was allowed to treat it as an action to compel the defendants to specifically perform their contract; and the court has rendered a decision containing findings of fact and conclusions of law, upon which a judgment substantially to that effect has been entered. It is as to the correctness of that judgment that we are now called upon to decide.

The contract which the defendants are thus adjudged to specifically perform is found by the trial court to have been as follows:

"That about the month of January, 1899, the said Shull and Snell agreed with the plaintiff that if the said plaintiff would procure and give to them a surety company bond in the sum of $10,000 in the form required by their counsel, Mr. Nellis, to protect them against loss on their said bond given to said bank, that then they would pay said $4,000 unpaid on their said obligations, with four per cent interest."

It is clear that there is no mutuality in such agreement. The plaintiff does not agree to "procure and give" the bond. He makes no promise and assumes no obligation whatever. The defendants receive no consideration whatever for their promise, and hence it is a mere *nudum pactum*. Not even a mutual and concurrent promise on the plaintiff's part can be found upon which to sustain it.

It is a familiar principle of equity that an agreement will not be enforced unless it is founded upon a valuable consideration and is mutual in its obligation and in its remedy. (3 Pom. Eq. Juris. § 1405; *Woodward* v. *Harris*, 2 Barb. 441, 442; *Phillips* v. *Berger*, 8 id. 527; *Wright* v. *Weeks*, 3 Bosw., 372; *Palmer* v. *Gould*, 144 N. Y. 671, 674.)

It is claimed, however, by the plaintiff that although he was not at all bound by the agreement so made, he did, in fact, fully perform on his part, and that thereupon a valuable consideration for the defendants' promise at once arose and the obligation became mutual.

What the plaintiff did towards performance on his part was, that something over two months after the agreement he tendered to the defendants such a bond as was mentioned in the agreement, and demanded that they pay over the $4,000 and interest. The defendants refused to accept the bond or to pay over the money. In other words, they claimed that, not being bound by their promise, they were under no obligation to do so. It seems very clear that they were not bound by that promise; and I cannot see how a mere subsequent offer on the plaintiff's part to do the thing which at the time of the contract he would not undertake to do, could make the defendants' promise a binding one. When the promisor allows the promisee to proceed, and, upon the faith of such promise, do that which the promisor *requested* him to do, it is equitable that he himself be held liable upon *his* promise; but when the promisee does no

more than to renew his request, the promisor is still at liberty to grant or refuse it, as he shall see fit, even though the promisee has by that time put himself in a condition to do that which he then for the first time offers to do. If the defendants had accepted the bond when the plaintiff tendered it, then their liability to pay over the money would be clear. Then the plaintiff would have fully performed on his part. He would have " *given* " the defendants the bond. But that the defendants were obliged to accept that bond and pay over the money, merely because it was then tendered to them, I cannot agree to.

There must have been not only a consideration, but an adequate one, passing to them before they can be adjudged to accept the bond. (22 Am. & Eng. Ency. of Law [1st ed.], 1031.) And clearly, until they have taken the bond and acquired the benefits flowing therefrom, they have received no consideration whatever. They never made any request that such a bond should be procured, and up to the time of its tender to them no benefit or consideration of any kind had accrued to them. I am of the opinion that they were then under no obligations to take it, and that no facts have been proven that authorized a judgment compelling them to accept it. And clearly, if they were under no obligation to take the bond, they were under none to pay over the $4,000 to the plaintiff.

It is a further well-settled rule that to warrant the enforcement of a contract in equity it " must be perfectly fair, equal and just in its terms and its circumstances." (3 Pom. Eq. Juris. § 1405.)

" Their said obligations," referred to in the agreement in question, were two written notes, or promises, executed by the defendants to the plaintiff, in each of which they agree to pay $2,000 and interest to the plaintiff whenever they shall be " relieved or discharged " from their obligation on a certain indemnity bond which they signed with the plaintiff and as surety for him to the National Spraker Bank. That indemnity bond is still held against them by the bank, and the notes which they executed to the plaintiff are still held by him. No offer was made for their surrender upon the trial, and no provision to that effect is made in the judgment. The answer to this objection by the plaintiff's counsel is that no such agreement was made in the contract. That is true, and it seems to me that in that respect the contract is neither " fair nor equal."

The defendants should not be obliged to pay those outstanding obligations before, by their terms, they are due, and yet the plaintiff be allowed to retain them. A fair and just contract would have provided that they be given up to the defendants, and probably the defendants would have insisted upon that provision if they had accepted the bond, or had supposed they were entering into any contract which the plaintiff intended to perform.

The so-called contract seems to be no more than an inquiry on the plaintiff's part as to whether, if he would give the defendants a surety company bond in place of the money which they then held as security, the defendants would give up the money and take the bond in lieu thereof. The defendants answer yes. The plaintiff assumes nothing. No other or further terms are made either as to when the bond must be given or as to any matters which were obviously necessary to protect the defendants should such an exchange be made. Two months or more afterwards, when the plaintiff says he will give such a bond and is ready to do it, the defendants decline to take it. Many things might have occurred in the meantime to prevent them, and clearly they had never made any contract that obligated them to accept it.

Although the trial court has found the contract as above stated, I am not at all satisfied that the evidence sustains even that; yet, conceding that it does, I am of the opinion that such a promise should not be enforced, and that the judgment appealed from should be reversed.

The defendants further claim that the judgment appealed from, in so far as it denies them costs against the plaintiff upon the dismissal of the first cause of action in the complaint, is erroneous and should be modified in that respect.

The trial court denied such costs upon the theory that the "substantial cause of action was the same upon each," and gave the certificate required by section 3234 of the Code. The court directed a "judgment of nonsuit upon the merits" as to the first cause of action. The answer to this cause of action set up a former judgment in bar, and the decision was against the plaintiff on that issue. It was, therefore, a decision on the merits. (*Deeley* v. *Heintz*, 169 N. Y. 129.)

I am of the opinion that the trial judge erred in holding that the

two causes of action are substantially the same. The second one is based upon a contract claimed to have been made long after every fact set up as the first cause of action had occurred. The relief sought, as the pleading was construed upon *this* trial, is entirely different, and I think the certificate should not have been granted. But for that certificate, judgment for costs would have gone against the plaintiff and in the defendants' favor, and should have been included in the final judgment from which this appeal is taken. As the granting of such certificate was error, the judgment should be modified by including therein the costs properly taxable to the defendants upon such first cause of action, and as so modified should be affirmed so far as it applies to the first cause of action. So far as it applies to the second cause of action, it is affirmed on the facts and reversed on the law, and a new trial granted, with costs of this appeal to the defendants to abide the event.

SMITH, J., concurred; CHASE and CHESTER, JJ., concurred in result; HOUGHTON, J., dissented.

Judgment upon the first cause of action modified by including therein the costs properly taxable to the defendants, and as so modified affirmed, and as to the second cause of action, affirmed on the facts and reversed on the law, and new trial granted, with costs of this appeal to the defendants to abide event.