### WHITE v. ROBINSON et al.

(Supreme Court, Appellate Division, First Department. December 20, 1912.)

1. BROKERS (§ 66*)—LIABILITY BETWEEN BROKERS—CONTRACT FOR DIVISION OF COMMISSIONS.

Under the contract with plaintiff, a broker, by defendant, a broker, commissioned by H. to sell land, that on acceptance by H. of any offer of purchase obtained by plaintiff defendant would divide equally with plaintiff the commission which defendant would receive from H., plaintiff, though producing one ready, able, and willing to purchase at a price acceptable to H., if she could get no more, has no claim against defend-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ant; the sale not being made, and defendant having received no commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

2. BROKERS (§ 66*)—LIABILITY BETWEEN BROKERS—CONTRACT FOR DIVISION OF COMMISSIONS.

Defendant, a broker, commissioned by H. to sell land, having contracted with plaintiff, a broker, that on acceptance by H. of any offer of purchase obtained by plaintiff defendant would divide equally with plaintiff the commission which defendant would receive from H., had a right, on plaintiff finding customers who made an offer acceptable to H., if she could not get more, to try to get such customers to offer more, without telling plaintiff that the offer made, if not increased, would be accepted, and to fix a limit of time, and that, too, a brief one, as H. was proposing to leave the country that day, in which plaintiff must produce his customer to sign a contract and make a cash deposit, and so is not liable to plaintiff because of the sale falling through, because of his inability to produce the customer within the time limited.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

3. NEW TRIAL (§ 66*)—VERDICT—DISREGARD OF INSTRUCTIONS.

The jury having disregarded instructions, their verdict should be set aside.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 132–134; Dec. Dig. § 66.*]

Appeal from Trial Term, New York County.

Action by George A. White against Douglas Robinson and the Charles S. Brown Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendants appeal. Reversed and dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

George Zabriskie, of New York City, for appellants.

H. G. Kosch, of New York City, for respondent.

SCOTT, J. [1] This is an action by one real estate broker against another under the following circumstances: Defendant was commissioned by a client, one Mrs. Haig, to sell a piece of real estate. It made a contract with plaintiff (to quote the complaint):

"That upon acceptance of any offer of purchase obtained by plaintiff by the said Mrs. Haig the defendant would divide equally with the plaintiff the usual and customary commission which it, the said defendant, would receive from the said Mrs. Haig, to wit, one per cent. on the purchase price."

Although the plaintiff did, as he alleges, produce a purchaser who was ready, able, and willing to purchase the property at a price satisfactory to Mrs. Haig, the sale was not made, and the defendant received no commission therefor. Consequently the plaintiff has no action upon the contract; for the rule in cases like the present is that, in order to entitle one broker to receive from another broker, on an agreement to divide commissions on the sale of real property, the commission must have been actually received by the broker whom it is sought to charge with liability (McCann v. Sawyer, 59 Mo. App. 480), and such

is the clear purport of the contract alleged in the complaint. Under such a contract there is no consideration for the defendant's agreement to divide commissions until a sale has been effected and a commission earned. Up to that time the agreement is wholly unilateral; for the plaintiff agreed to do nothing. Cook v. Casler, 87 App. Div. 8, 83 N. Y. Supp. 1045. Such a contract as the plaintiff pleads is quite unlike the usual contract, where an owner intrusts property to a broker to sell at a stated price. In such a case, if the broker finds a purchaser ready, able, and willing to buy at the stated price, he has fulfilled the condition of his employment and earned his compensation. Here there was no price fixed, no exclusive right to find a purchaser conferred upon plaintiff, and no obligation assumed to accept any purchaser whom he might produce. His right to compensation was wholly contingent upon two conditions: First, that he should find an acceptable purchaser; and, second, that a sale was effected to the purchaser so found by him and a commission earned by defendant.

[2, 3] The plaintiff, however, seeks to recover an amount equal to one-half the commission, upon the theory that defendant has in some way failed of a duty which it owed to him, and has thereby been guilty of fraud. It is not easy to see what duty the defendant owed to plaintiff in the premises, and we are quite satisfied that no fraud was practiced by defendant. Whether the defendant made the best possible bargain for its client is no concern of plaintiff's. It appears from the evidence that plaintiff did find purchasers who desired to acquire the property. The usual dickering as to price took place, with the result that finally plaintiff's prospective purchasers offered the price of $485,-000, which was acceptable to Mrs. Haig, if she could get no more. This offer was communicated to Mrs. Haig on the afternoon of Monday, August 31, 1908, and she expressed her willingness to accept it. What took place the next morning is in dispute. The plaintiff says that at about 11:30 o'clock one of the defendant's officers informed plaintiff that Mrs. Haig declined to accept $485,000; that plaintiff tried to get the purchasers to raise their offer, but could not find them; that defendant then, shortly before 12 o'clock, gave plaintiff until 12:15 to produce his clients and have them make good their offer. This plaintiff was unable to do, and the sale fell through. The officer of defendant with whom plaintiff had the conversation denied that he had told plaintiff that Mrs. Haig declined the offer of $485,000, but admitted that he had given plaintiff only until 12:15 o'clock to produce his clients to consummate the sale, giving for this action the very reasonable explanation that Mrs. Haig proposed to sail for Europe at 6 o'clock that evening, and it was desired to close a sale before she left. It seems to us to be quite immaterial whether or not defendant tried, on the morning of September 1st, to get plaintiff's clients to increase their offer. This it had a perfect right to do, and was not bound to make such an attempt utterly hopeless by informing plaintiff that if he could not get $490,000 it would accept $485,000. It was also quite justified in fixing a limit of time, and, under the circumstances, a short one, within which the sale must be concluded. Upon this subject the court correctly charged as follows:

"That the defendant had a right to require that the purchaser produced by the plaintiff should sign the contract and make a cash deposit by 12:15 on Tuesday, September 1, 1908. That if the jury believed that for any reason Klein and Jackson (the proposed purchasers) were not ready by 12:15 on Tuesday to sign the contract and make a cash deposit according to their offer, then the plaintiff is not entitled to a verdict."

This was the law of the case as given to the jury, and they were bound, if they followed it, to render a verdict in favor of the defendant, because in any view of the testimony the purchasers were not prepared, at the hour fixed, to complete the purchase. As the jury disregarded the instructions, the verdict should have been set aside. Indeed, upon the undisputed evidence, the court should have dismissed the complaint.

It follows that the judgment and order appealed from must be reversed and the complaint dismissed, with costs to appellant. All concur.