MARK M. DITTENFASS, Respondent, *v.* DAVID HORSLEY and Others, Appellants, Impleaded with UNIVERSAL FILM MANU-FACTURING COMPANY and Others, Defendants.

First Department, February 23, 1917.

Equity — specific performance of unilateral contract — when assignee of contract not entitled to specific performance — pleading — complaint — option — tender of performance — consideration for supplementary agreement.

A court of equity will not require specific performance of a unilateral contract against the party who has executed it at the instance of another party thereto who is not likewise obligated to perform.

The assignee of a contract or option to purchase corporate stock, who has not assumed the obligations of his assignor thereunder, is not entitled to specific performance, although he alleges readiness, willingness and ability to perform the obligations of his assignor.

Complaint in a suit by an assignee to compel the specific performance of an option to purchase stock examined, and *held*, not to state a cause of action.

Where an option specifies no *place* of performance it is incumbent upon the party securing the option to tender performance at the time specified.

A nominal consideration specified in an option agreement cannot be extended to constitute a consideration for a supplementary agreement.

SMITH, J., dissented, with opinion.

APPEAL by the defendants, David Horsley and others, from orders of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of June, 1916, denying the appellants' separate motions for judgment on the pleadings, consisting of an amended complaint and amended answers thereto.

*Samuel F. Moran,* for the appellants.

*Max D. Steuer,* for the respondent.

LAUGHLIN, J.:

The pleadings are an amended complaint, separate answers by the appellants and replies to defenses relating to the validity and enforcibility of the alleged contract on which the action is based as affected by the non-payment of the stamp tax imposed

by the provisions of section 270 of the Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], added by Laws of 1910, chap. 38, as amd. by Laws of 1912, chap. 292).*

This is a suit in equity for the specific performance of an agreement in writing made by the appellant, William Horsley, on the 8th day of February, 1913. The plaintiff claims the right to enforce the agreement by virtue of certain assignments. He alleges that in the month of February, 1913, one Selznick, mentioned in the agreement, duly assigned all his right, title and interest. therein to one Burt, who in the same month duly assigned all his right, title and interest therein to the plaintiff. The agreement is as follows:

"In consideration of $1.00 receipt whereof is hereby acknowledged, William Horsley, of New York City, agrees to sell to Lewis J. Selznick, of New York City, 500 shares of common and 500 shares of preferred capital stock of the Universal Film Manufacturing Company, a New York corporation, par value of said shares being $100 each, for the sum of $40,000, on the following terms and conditions: $10,000 in cash to be paid on Monday, February 10th, on the payment of which he is to receive 125 shares of the preferred and 125 shares of the common. The balance of the payments to be paid $1,000 monthly by the execution of collateral notes of $1,000 each payable monthly with six per cent (6%) and have thereto attached 25 shares of the stock. The said notes to be deposited at any bank or trust company that may be agreed upon between the said William Horsley and Lewis J. Selznick.

"In witness whereof the parties hereto have hereunto set their hands and seals this eighth day of February, 1913, in the presence of Witness E. H. Underhill.

"WILLIAM HORSLEY."

The motions for judgment on the pleadings present the questions as to whether the complaint shows a valid contract enforcible in equity as between William Horsley and Selznick, and if so, whether it is enforcible at the instance of the plaintiff.

---

* Since amd. by Laws of 1913, chap. 779.—[Rep.

Not only is there a failure to allege that the plaintiff assumed the obligations of Selznick as between him and his assignor but the complaint contains no allegation with respect to any agreement between the plaintiff and William Horsley by which the former accepted or became bound to perform the obligations of Selznick, if any, under and by virtue of the agreement, and, therefore, Horsley could not have enforced the agreement against the plaintiff. It is now the well-settled law in this jurisdiction that a court of equity will not require specific performance of a unilateral contract against the party who has executed it at the instance of another party thereto who is not likewise obligated to perform. (*Levin* v. *Dietz*, 194 N. Y. 376; *Stokes* v. *Stokes*, 148 id. 708; *Ide* v. *Brown*, 178 id. 26; *Wadick* v. *Mace*, 191 id. 1.) That rule has been extended by *Genevetz* v. *Feiering* (136 App. Div. 736) wherein it was held that the assignee of a contract who has not assumed the obligations of his assignor thereunder is not entitled to specific performance although he alleges readiness, willingness and ability to perform the obligations of his assignor. The decision last cited is authority for refusing specific performance at the instance of the plaintiff even if the original assignor, Selznick, could have maintained such an action. The contract was doubtless assignable and the assignee could maintain an action at law for a breach thereof, but it does not follow that a court of equity *must* entertain jurisdiction at the instance of an assignee who, if his assignor be in default, is not bound to perform for that would often require two trials of the same issue. There would be one trial to see whether the defendant or the assignor was guilty of a breach, and if the former, then that trial would go for naught and the defendant would be obliged to sue the assignor, who would not be bound by the first judgment. (*Suydam* v. *Dunton*, 84 Hun, 506.) It will thus be seen that there is justification for a court of equity refusing to entertain an action for specific performance by an assignee of the contract who has not assumed the obligations of his assignor.

Moreover, the plaintiff, I think, fails to show that Selznick became bound by the agreement, which at most was an option

given by William Horsley to him to purchase the stock on the terms specified. The assignment by Selznick was after the time for acceptance and performance, and the only acceptance or tender of performance claimed is by him. Upon no theory was the agreement binding upon Selznick at the time of its execution, for he did not agree to perform (*Levin* v. *Dietz, supra; Stokes* v. *Carpenter,* 166 App. Div. 441), and even had he signed it, it could not be construed as obligating him to perform. (*Booth* v. *Milliken,* 127 App. Div. 522.) Assuming, however, that it was a valid option, the plaintiff fails to show that it was duly accepted by Selznick or that the latter duly tendered the cash payment of $10,000 and the notes and offered to agree with respect to the depository and to perform at the time specified in the writing therefor. There is no allegation that Selznick ever communicated to William Horsley any acceptance of the option, or tendered to him the said payment or offer to perform at the time specified or at any other time. On the assumption that the agreement constituted a valid option it specifies no *place* of performance and it was, therefore, incumbent upon Selznick to tender performance to William Horsley at the time specified and that is not shown. The plaintiff attempts to establish an acceptance and a tender of performance on the part of Selznick by alleging that it was agreed between him and William Horsley that the payment of the $10,000 and the delivery of the notes and of the stock was to take place in the room of the plaintiff at the office of the defendant, Universal Film Manufacturing Company, on the 10th day of February, 1913, and that Selznick on that day duly attended at the place specified with $10,000 in cash and was then and there ready to execute the notes and receive the stock and was in all things prepared to carry out each of the terms of the agreement on his part, but that William Horsley failed to appear at said time and place or at any time for the purpose of carrying out the terms of the agreement. I am of opinion that these facts, if proved, would not show an acceptance of the option by Selznick or a due tender of performance on his part. It does not appear whether this agreement with respect to the place of performance was in writing or rested in parol, but that is immaterial, for no consideration is alleged

therefor, and, therefore, William Horsley, even if bound by the agreement in writing on account of the recital therein of a nominal consideration, was not bound by the supplemental agreement with respect to the place of performance. Horsley's failure to appear was notice to Selznick that he did not deem himself bound by the agreement with respect to meeting Selznick. (See *Levin* v. *Dietz, supra.*) The plaintiff does not allege when the supplemental agreement was made but it is fairly to be inferred that it was subsequent to the agreement in writing for otherwise it is a reasonable assumption that the place of performance would have been specified therein. The nominal consideration specified in the writing, therefore, if otherwise sufficient, cannot be extended to constitute a consideration for the supplemental agreement. The plaintiff, therefore, fails to show a cause of action for specific performance within the authorities holding that a valid option when duly accepted may be specifically enforced in equity. (See *Jones* v. *Barnes,* 105 App. Div. 287; *Carney* v. *Pendleton,* 139 id. 152; *Bullock* v. *Cutting,* 155 id. 825; *Stokes* v. *Carpenter, supra.*)

For these reasons and regardless of the other questions that have been argued I am of opinion that the plaintiff fails to show a cause of action for specific performance. It follows that the orders appealed from must be reversed, with separate bills of costs on the separate appeals, and each motion for judgment on the pleadings granted, with ten dollars costs.

SCOTT, DOWLING and DAVIS, JJ., concurred; SMITH, J., dissented.

SMITH, J. (dissenting):

The first objection made by the defendants is that the agreement signed by Horsley lacks mutuality of obligation and remedy, and being merely a unilateral contract is incapable of specific performance in favor of either party. There was no obligation, say the defendants, upon the part of Selznick to purchase the stock or to pay the purchase price or to be bound in any manner. The written agreement contains simply the promise of Horsley to sell the stock at a certain price with no promise whatsoever on the part of Selznick. That the amount of consideration is immaterial is well settled. (36 Cyc.

First Department, February, 1917. [Vol. 177.

626.) Further, the complaint alleges a valuable consideration. Selznick having paid for his right to purchase at a future time was not called upon to take any further step until the time arrived. He had the privilege until the tenth day of February to decide whether or not he would purchase the stock, and for this privilege he paid Horsley the consideration which Horsley demanded of him. There was no necessity of giving notice of an intent to accept the option, because he had until that time to determine, and if further time was necessary to enable Horsley to present his papers, the law would imply the right to reasonable further time. (*Houghwout* v. *Boisaubin*, 18 N. J. Eq. 315, 319.) In 3 Columbia Law Review, at page 9, James Barr Ames, the former dean of the Harvard Law School, in writing upon this subject, says: " When an option to purchase land is given and accepted, the acceptance is, in most cases, fairly to be interpreted as the giving of a counter promise, so that the resulting bargain is like any other bilateral contract for the sale and purchase of land. But the option may be granted in such a form as to admit of acceptance without any counter obligation. One promises, for instance, under seal or in consideration of one dollar, to convey a certain piece of land to A upon A's paying, without any obligation to pay, $1,000 therefor within a month. Here the obligation is purely unilateral from beginning to end. If, however, the obligor refuses to accept the money when duly tendered, on no sound equitable principle can he resist A's bill for specific performance. He has made a valid contract, he did not contemplate a counter obligation, and a decree against him will secure to him the purchase money, the expected equivalent for his undertaking. *Borel* v. *Mead* (3 N. Mex. 84), in which the plaintiff was successful, seems to have been such a case."

It is apparent from reading the definitions given the word " Option " (see " Words and Phrases," tit. " Option ") that the same is used in two distinct senses. Sometimes it merely refers to a revocable offer, in other connections it means an offer the terms of which have been incorporated into a valid and enforcible contract, and it is always necessary to determine in which sense the court intends it. With this distinction in mind, it is possible to distinguish the cases on which defendants chiefly

rely as establishing the doctrine that the courts will not enforce unilateral "contracts." Thus, while the head note of *Levin* v. *Dietz* (194 N. Y. 376) states that the holding was that "specific performance of a unilateral contract will not be adjudged against the party who has executed it, on behalf of the opposite party who is not in any manner bound by the contract," an examination of the case will show that there was no contract at all, and that the vendees were attempting to accept an offer that had been withdrawn and which, because it was made without any consideration, could be withdrawn. In fact, the opinion of the Court of Appeals expressly excepts from consideration, as decided on principles not applicable to the case under consideration, those cases where there was a binding contract. (See pp. 378, 379.) *Wadick* v. *Mace* (191 N. Y. 1) is likewise clearly distinguishable. There was an express surrender by one of the parties of the right of specific performance which the court held to work a surrender by implication of the same right in the other party, and in addition the description of the property was held to be so indefinite that the court would not be able to decree specific performance even if it were willing to do so. In *Carney* v. *Pendleton* (139 App. Div. 152) the Appellate Division in the Second Department, in considering the effect of a written option given by the vendor for a valuable consideration and signed by him, agreeing to sell certain property within a certain time at a fixed price, which option was exercised by the other party within the time stated by a notice to the vendor and demand for performance, held that the agreement became mutual and was enforcible by the exercise of the option. Mr. Justice BURR pointed out the clear distinction between that case and the two cases in the Court of Appeals which we have previously referred to: "The learned counsel for the respondents claim, and the learned trial court seems to have held, that by two recent decisions of the Court of Appeals this well-established rule had been overthrown. (*Wadick* v. *Mace*, 191 N. Y. 1; *Levin* v. *Dietz*, 194 id. 376.) We do not so understand them. In *Wadick* v. *Mace* (*supra*) the decision was put upon the ground that it affirmatively appeared from the written instrument that the remedy of specific performance was expressly waived, and in *Levin* v. *Dietz*

First Department, February, 1917.          [Vol. 177.

(*supra*) the decision was put upon the ground that there had been no acceptance of the vendor's promise to perform until after the promise had been withdrawn. But in the latter case the court seemed to recognize the rule above stated, and says that where the 'agreement sought to be enforced gave an option which the party seeking to enforce had expressly accepted within the term of its life * * * under these circumstances * * * there was a 'binding agreement' or a 'completed bargain,' and that the written contract although unilateral in form could be enforced.'" (See, also, *Fox* v. *Hawkins,* 150 App. Div. 801.)

There are cases in other jurisdictions very similar to this where the question of mutuality has been raised and decided in favor of the one seeking performance. Thus, in *Ross* v. *Parks* (93 Ala. 153; 8 So. Rep. 368) it was held that where the owner of land signs an agreement to convey it to a purchaser if the latter will pay $200 at a given time, the expressed consideration of the contract being fifty cents, the election of the purchaser to treat the contract as binding, and to enforce it, gives it such mutuality as will support a suit for specific performance, although the purchaser did not sign the agreement. And on a similar state of facts, it was said, in *Johnston* v. *Trippe* (33 Fed. Rep. 530, 536): "Does such a contract indeed lack mutuality? The seller, for fair consideration, agrees to give the proposed purchaser a certain fixed time in which to make the contract mutual, by acceptance of the offer to sell. If he accepts within the specified time, both parties are fully bound * * *. I see no reason why a court of equity should not enforce such a contract. On the contrary, it seems to me it would be inequitable to refuse its enforcement. I am clear, therefore, that this case does not come within the class where lack of mutuality will prevent enforcement of the contract, and that it does come within a well-recognized exception to that rule, of optional sales upon fair consideration."

Nor do I conceive that it can matter whether performance is here demanded by Selznick or by his assignee. Upon the failure of Horsley to transfer the stock at the time and place agreed upon, Selznick had the clear right to appeal to the law to compel Horsley to perform his contract. The assignee here offers in the complaint to pay in cash the full consideration of

$40,000. The vendor would thereby get the full consideration for which he has bargained. The law should not permit the extension of the equitable rule to cases not within its reason.

These contracts are not uncommon in the commercial world, and I apprehend it would be a great surprise to find that they are not enforcible either in the hands of the original contractee or his assignee. Selznick in this case stands upon the same right as does a lessee with an option to purchase. As Mr. Justice CARR says in his concurring opinion in the *Carney Case (supra)*: "It is quite common to find such option agreements in leases. It would be going very far to hold that such agreements in leases are not enforcible in equity. If such is to be held, then the holding would be quite contrary to the common understanding of the parties."

The case of *Genevetz* v. *Feiering* (136 App. Div. 736) holds no other rule. In that case the only consideration for the vendor's promise to sell was the vendee's promise to purchase. An assignee of the vendee who has not assumed his assignor's obligation to purchase was there held not entitled to specific performance for lack of mutuality. But here the consideration of Horsley's promise to sell was not Selznick's promise, but a valuable consideration paid at the time. Selznick made no promise to buy and yet within the authorities because he gave a valuable consideration to Horsley for the option he could compel specific performance. Horsley has just as much claim on Selznick's assignee as upon Selznick, and specific performance should not be denied the assignee, therefore, if allowed to the assignor. If a lease contain an option to purchase, that option may give to the lease its greatest value. If the lease be assigned by the tenant the landlord has the same claim against the assignee as against the original tenant. In neither case is there a promise to purchase. The assignee would seem to have, therefore, an equal right with the tenant to demand specific performance of the promise contained in the option.

We come now to the second question, whether the failure to affix and cancel stock transfer stamps to the writing pleaded, or to pay any transfer tax thereon, constitutes a defense to the action. It is not necessary again to review at length the meaning to be given section 270 of the Tax Law (Consol. Laws,

chap. 60 [Laws of 1909, chap. 62], added by Laws of 1910, chap. 38, as amd. by Laws of 1912, chap. 292),* requiring the affixing of stamps, and section 278, providing that "no transfer of stock made after June first, nineteen hundred and five, on which a tax is imposed by this article, and which tax is not paid at the time of such transfer, shall be made the basis of any action or legal proceedings, nor shall proof thereof be offered or received in evidence in any court in this State," because these statutes and the few decisions interpreting them received careful consideration in the court below, and we agree with the conclusions reached therein. The language of the Tax Law, as interpreted by the Court of Appeals in *Bean* v. *Flint* (204 N. Y. 153) is sufficiently explicit to warrant us in holding that there is no intention in the law to tax mere offers, intentions or incomplete transactions. The very object of this suit is to effect a transfer of defendant's interest in this stock to plaintiff, and until that transfer is effected I am of the opinion that no tax is payable under section 270.

I think that the orders appealed from should be affirmed, with costs.

Orders reversed, with separate bills of costs on the separate appeals, and motions for judgment granted, with ten dollars costs.