WILLIAM   A.   SCHUYLER   *v.*   KIRK   BROWN   REALTY
COMPANY.

(Supreme Court, Onondaga Special Term, November, 1919.)

Specific performance — contract to convey real estate — demurrer
to complaint overruled.

Where the complaint in an action by the assignee of the
vendee to compel specific performance of a contract to convey
real estate alleges that plaintiff " is ready and willing and
hereby offers to pay the residue of the purchase money to
the defendant and to give the purchase money bond, executed
by plaintiff's assignor or by this plaintiff or by both, as the
defendant may elect, and the purchase money mortgage as
stipulated in the aforesaid written contract," a demurrer to

the complaint on the ground that the allegation therein relative to the assignment of the contract in suit shows that it does not impose any obligations or covenants or agreements on the part of the plaintiff to perform those which his assignor made to the defendant, must be overruled upon the ground that while it may be doubted whether plaintiff's offer would be sufficient foundation for a separate and later action to enforce it, there is no doubt that it can be enforced in the present action as a basis and condition for any relief given to the plaintiff.

ACTION for specific performance. Demurrer to complaint.

Bond & Shoeneck (George H. Bond, of counsel), for demurrant.

Hancock, Spriggs, Melvin & Hancock (Stewart F. Hancock, of counsel), in opposition.

Ross, J. This action is brought for specific performance on the part of the defendant of a certain agreement made on the 21st day of March, 1918, between the defendant and one T. Aaron Levy, whereby the defendant agreed to sell, and the second party to purchase, certain real property in the city of Syracuse for the sum of $36,500; $500 was to be paid at the time of signing the agreement, $6,000 on the delivery of a good and sufficient warranty deed and an official abstract of title, and the balance to be paid in equal annual payments of $1,000 each, beginning on May 1, 1919, to be secured by the bond of said second party (T. Aaron Levy), together with a purchase money mortgage on said property. The complaint alleges that, prior to the commencement of the action, the aforesaid T. Aaron Levy sold, assigned and transferred to the plaintiff for a valuable consideration, all his right, title and interest in and to the contract here-

tofore referred to; "That the plaintiff's assignor (T. Aaron Levy) has duly performed all of the conditions of said agreement on his part, and has always been ready and willing and the plaintiff herein still is ready and willing to fulfill all the obligations imposed upon the plaintiff's assignor or upon himself as assignee in and by said agreement, and for a marketable title of said premises described in the aforesaid contract. * * * plaintiff is ready and willing, and hereby offers to pay the residue of the purchase money to the defendant and to give the purchase money bond executed by the plaintiff's assignor or by this plaintiff or by both, as the defendant may elect, and the purchase money mortgage as stipulated in the aforesaid written contract." There are other allegations in the complaint in reference to a claimed inability of the defendant to convey all of the premises described in the aforesaid agrcement, and for a just deduction from the purchase price on account of the deficiency of quantity due to the inability of the defendant to convey all of said premises, which last mentioned claim is not relevant to the questions herein presented.

The defendant's claim, as presented by this demurrer, is, in substance, that the allegation in the complaint relative to the assignment of the contract in question shows that it does not impose any obligations or covenants or agreements on the part of the assignee to perform the obligations, covenants and agreements which his assignor made to the Kirk Brown Realty Company. The defendant's counsel, as a part of his brief, furnished to this court a copy of the assignment executed by T. Aaron Levy on or about the 25th day of April, 1919, to the plaintiff, which assignment does not show the assumption by the plaintiff of any obligations. Strictly speaking, the only matters which I can consider upon this demurrer

are the matters which appear or fail to appear in the complaint. The assignment in question is not in terms a part of the complaint, but, from the absence of any allegation in the complaint that the plaintiff did not in fact assume the obligations which rested upon the assignor, that fact may be assumed; although, as I view the questions presented, the failure of the plaintiff to assume in the assignment the obligations of his assignor does not affect his cause of action.

The basis of the claim of the defendant and of the cases which he cites, rests upon the apparent doctrine of *Wadick* v. *Mace,* 191 N. Y. 1; upon what is termed " Mutuality of Remedy." The learned judge, in the case referred to, stated in the opinion (p. 5): " Both parties at the time when the contract is executed must have the right to resort to equity for its specific performance or it will not be specifically enforced. * * * The general rule being that an executory contract will not be specifically enforced unless the remedy is mutual."

The action in this case was brought by the vendee against the executor of the vendor, and, as was stated by Mr. Justice Smith, in referring to this case in his dissenting opinion in the case of *Dittenfass* v. *Horsley,* 177 App. Div. 149: " There was an express surrender by one of the parties of the right of specific performance which the court held to work a surrender by implication of that same right in the other party, and in addition the description of the property was held to be so indefinite that the court would not be able to decree specific performance, even if it were willing to do so." And Judge Bartlett, writing for the court in the prevailing opinion on page 6, uses the following language: " While I think that this contract lacks the mutuality of remedy which has been so often pro-

nounced essential to the right to a specific performance, there are other reasons which amply support the action of the trial court in denying that relief to the plaintiff. The uncontradicted evidence leaves no doubt that the minds of the parties never met in respect to the specific location and boundaries of the property to be conveyed.'' And again, on page 7: '' These facts, I think, make it sufficiently plain that the real agreement between the parties * * * was either so vague and indefinite in essential respects, or would be so inequitable in its effect, if construed in accordance with the contention of the vendee, that it cannot be specifically enforced.'' Thus it appears upon an examination of that case that the broad statement of the rule of mutuality went beyond the necessities of the decision in that case.

The language of the courts in reference to mutuality in specific performance, which sometimes has been carelessly applied, was frequently based upon the language used in Lord Justice Fry's Treatise on Specific Performance. This doctrine was somewhat criticized by the late Prof. James Barr Ames in an article published in volume 3, Columbia Law Review, page 9, and also in Ames' Lectures on Legal History, page 370, in which Prof. Ames, while not disputing the general rule laid down by Lord Justice Fry, states eight separate exceptions, each of which is at variance with the general rule above referred to, and follows with a statement that: ''A rule so overloaded with exceptions is fairly open to this severe criticism by Prof. Langdell: ' The rule as to mutuality of remedy is obscure in principle and in extent, artificial, and difficult to understand and to remember.' '' And continues: '' If, however, we examine the actual cases in which a plaintiff failed to obtain specific performance

of a contract solely on the ground that equity could not force him to perform his own counter promise, we shall find that the underlying principle of the decisions is simple and just, easy to grasp and to carry in the mind, and one that may be expressed in few words without qualifying exceptions. This principle may be stated as follows: Equity will not compel specific performance by a defendant if, after performance, the common-law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract.''

Applying these principles to the case at bar, we have an agreement of purchase and sale of real property; the vendor (the defendant) retains the legal title as security for the payment of the purchase money; in addition to this, he has the agreement of plaintiff's assignor (T. Aaron Levy) to execute his bond; and of neither of the foregoing rights can he be deprived except by his own agreement; so that, after performance, the common-law remedy of damages would not be his (the defendant's) sole security for the plaintiff's performance of the contract. As stated by Prof. Ames, *supra* (p. 376): '' The reciprocity of remedy required is not the right of each party to the contract to maintain a bill for specific performance against the other, but simply the right of one party to refuse to perform, unless performance by the other is given or assured.''

The case specially relied upon by the defendants (*Dittenfass* v. *Horsley,* 177 App. Div. 143; affd., 224 N. Y. 560) was '' a suit in equity for the specific performance of an agreement in writing made by the appellant, William Horsley, on the 8th of February, 1913. * * * He (p. 449) alleges that in the month of February, 1913, one Selznick, mentioned in the agree-

ment, duly assigned all his right, title and interest therein to one Burt, who in the same month duly assigned all his right, title and interest therein to the plaintiff. The agreement is as follows: ' In consideration of $1.00, receipt whereof is hereby acknowledged, William Horsley, of New York City, agrees to sell to Lewis J. Selznick, of New York City, 500 shares of common and 500 shares of preferred capital stock of the Universal Film Manufacturing Company, a New York corporation, par value of said shares being $100 each, for the sum of $40,000.00, on the following terms and conditions: $10,000.00 in cash to be paid on Monday, February 10th, on the payment of which he is to receive 125 shares of the preferred and 125 shares of the common * * *.' '' Then follow provisions in regard to the payment of the balance, and the last clause:

'' ' In witness whereof the parties hereto have hereunto set their hands and seals this eighth day of February, 1913, in the presence of Witness E. H. Underhill.

'' ' WILLIAM HORSLEY.' ''

We have here an agreement which at most was an option given by Horsley to Selznick, which was assigned by the holder after the time for acceptance and performance had elapsed. As stated in the opinion, on page 146: '' Upon no theory was the agreement binding upon Selznick at the time of its execution, for he did not agree to perform. * * * and even had he signed it, it could not be construed as obligating him to perform. * * * Assuming, however, that it was a valid option, the plaintiff fails to show that it was duly accepted by Selznick or that the latter duly tendered the cash payment of $10,000 and the notes and offered to agree with respect to the depository and to perform at the time specified in the writing therefor.''

The plaintiff's rights in the *Dittenfass* case were based upon a naked offer or, at best, an expired option, and no allegation of a tender of performance of the conditions of the option or offer; while in the case at bar, we have, as a foundation of the action, a bilateral contract which can be enforced by the defendant against the vendee, Levy, and the plaintiff alleges performance so far as his assignor or he were required to perform until the beginning of the action, and a tender of performance by both Levy and himself as to the matters yet to be performed, including a tender of the security of his own bond in addition to that of Levy. In other words, the defendant has lost no rights which he had against Levy, but has the opportunity to acquire additional security by the voluntary action of the plaintiff, and retains the right, in the event of his legal remedies becoming inadequate, to compel specific performance against Levy.

The right of an assignee of a vendee of a contract to compel specific performance is recognized in the cases. *Jones* v. *Lynds*, (1838) 7 Paige, 301. In this case the learned chancellor states as follows: "In other words, the assignee of a contract takes it subject to all equities which existed between the parties thereto arising out of such contract. And the court will require him to perform all the stipulations which the assignor was bound to perform, in favor of the adverse party, to entitle him to a decree for specific performance." *Seaman* v. *Van Rensselaer*, 10 Barb. 81; *Dodge* v. *Miller*, 81 Hun, 102.

The statement of Hand, J., who wrote the opinion in the *Seaman* case, on page 86, is instructive: "On a valid contract for the purchase of land, the vendor, in equity, is deemed to stand seized for the benefit of the purchaser, and has a lien upon it for the purchase money. And as against the assignee of the vendee, he

may .proceed *in rem* against it. And it is said, the vendee, if he had paid, and the title be defective, also has a lien. They are trustees for each other — one of the land, and the other of the purchase money.''

The cases cited by the defendant are distinguishable from the instant case, either in the facts or in the relief sought. In a general way, it may be stated that in those cases wherein the assignee of the vendee sought specific performance, either as plaintiff, or alleged and sought such relief by way of counterclaim, he was either unable to perform or had failed to tender performance of all the obligations which the vendee, his assignor immediate or remote, had obligated himself to perform.

It seems to me that the true doctrine in regard to mutuality in specific performance is that a defendant should not be compelled to specifically perform his promise unless equity is able to give the defendant, at the time of the decree or later, such performance on plaintiff's part as defendant bargained for. See article of Prof. William Draper Lewis, entitled '' The Present Status of the Defense of Want of Mutuality in Specific Performance,'' in the American Law Register, New Series, Vol. 42 (1903), page 591, which gives the following rule (p. 629): '' 'A plaintiff can have specific performance in all cases where the contract is fair and reasonable in all its parts, where he is not himself in default, and where the obligations of the defendant which he seeks to enforce are capable of being enforced by the court, and that to this rule there are no exceptions, either on the ground of want of mutuality in the remedy or on the ground that the court cannot undo what it directs to be done.' ''

The plaintiff, in his complaint, stated that he '' is ready and willing, and hereby offers to pay the residue of the purchase money to the defendant, and to give

the purchase money bond executed by plaintiff's assignor or by this plaintiff or by both, as the defendant may elect, and the purchase money mortgage as stipulated in the aforesaid written contract." It may be doubted whether this offer would be sufficient foundation for a separate and subsequent action for its enforcement, but there can be no doubt that it can be enforced in this action, as a basis and condition for any relief given to the plaintiff. In brief, the defendant has every right, legal and equitable, he ever possessed against Levy, and in addition has acquired rights against the plaintiff which this court can and will enforce, and there is no good reason why in justice and equity the defendant should not be compelled to perform the obligations he owed to the plaintiff's assignor.

The demurrer overruled, with costs, but with leave to the defendant, within twenty days after service of the copy of the interlocutory judgment to be entered hereon, to withdraw said demurrer and answer the complaint.

Ordered accordingly.