EDWIN B. HIRSCHBERG, Appellant, *v.* JACQUES H. HECHT, Respondent.

First Department, June 10, 1932.

*Felix M. Rosenstock,* for the appellant.

*Edwin R. Wolff* of counsel [*Walter & Wolff,* attorneys], for the respondent.

MARTIN, J. This action was brought by the plaintiff to recover the sum of $5,000 because of the alleged breach by the defendant of an agreement under the terms of which the defendant agreed to repurchase 100 shares of stock of the Deal Knitting Mills, Inc., at the par value of $50 per share, within thirty days after a request to do so. After issue was joined on motion of the defendant the court dismissed the complaint. This appeal, from the order dismissing the complaint, requires a consideration of both the complaint and the contract annexed thereto upon which the action is based.

The plaintiff, Edwin B. Hirschberg, was the selling agent for the Deal Knitting Mills, Inc., and the owner of 100 shares of its stock. The defendant Jacques H. Hecht was the president of that corporation. During the month of November, 1926, they entered into an agreement, which was under seal and which, in part, provided as follows:

" *First.* The said Jacques H. Hecht hereby agrees to repurchase from the said Edwin B. Hirschberg the said one hundred shares of common stock of Deal Knitting Mills, Inc. at the par value thereof, at any time within thirty days after the said Edwin B. Hirschberg shall request the said Jacques H. Hecht in writing to make such repurchase.

" *Second.* The said Edwin B. Hirschberg hereby agrees that the said Jacques H. Hecht shall have the right to repurchase, at the par value thereof, the said one hundred shares of common stock of Deal Knitting Mills, Inc., at any time within thirty days after the termination of the said Edwin B. Hirschberg's relations with the said Deal Knitting Mills, Inc., as selling agent thereof; or at any time within thirty days after the death of the said Edwin B. Hirschberg.

" *Third.* The transfer of the certificate for the said one hundred shares of common stock of Deal Knitting Mills, Inc. shall be subject to this agreement; and, upon the execution hereof, the said certificate shall forthwith be endorsed as follows: ' This certificate is subject as to transfer to a certain agreement made between Jacques H. Hecht and Edwin B. Hirschberg, dated November —, 1926,' and said endorsement shall be signed by the said Edwin B. Hirschberg.

" *Fourth.* This agreement shall be binding upon and enure to the benefit of the executors, administrators and assigns of the respective parties hereto, provided that no assignment of this agreement shall be made by the said Edwin B. Hirschberg without the written consent of the said Jacques H. Hecht first had and obtained."

The complaint alleged that in or about the month of November, 1926, the plaintiff and defendant entered into an agreement in writing, pursuant to which the defendant agreed to repurchase from the plaintiff at the par value thereof, 100 shares of the Deal Knitting Mills, Inc., stock; that at the time of the execution of the agreement the plaintiff was the owner of the stock; that the par value was fifty dollars; that on or about November 3, 1930, the plaintiff duly requested defendant in writing to repurchase the stock; that plaintiff tendered to defendant a certificate for the stock, but defendant failed and refused to repurchase same; that plaintiff is and has at all times been ready, able and willing to perform the agreement on his part and in so far as permitted has duly performed the same; that the defendant has failed and refused to perform his part of the contract to plaintiff's damage.

The court held that the contract was unenforcible, and in dismissing the complaint cited the case of *Hallgarten* v. *Wolkenstein* (204 App. Div. 487) as an authority for the decision. The contract sued upon in that case was not similar to the contract here under consideration. In that case a letter signed by one of the parties, but in no way binding upon the other, was offered to prove the contract. There was no mutuality shown and there was no consideration for the agreement.

In this case the agreement between the parties is signed by both plaintiff and defendant and there is mutuality and consideration. In the first paragraph of the agreement we find the promise sued upon. The defendant agrees to buy the stock within thirty days after a request by plaintiff. In the second paragraph the plaintiff agrees to permit the defendant to repurchase the stock at any time within thirty days after the termination of plaintiff's services. The parties agree in the fourth paragraph to bind their executors, administrators and assigns by the terms of the contract.

The plaintiff necessarily contracted to hold the stock and not to sell it to any one other than the defendant during the period of his employment and for thirty days thereafter and not to assign the contract unless he received the written consent of the defendant. This in itself is a sufficient consideration for the promise of the defendant to repurchase the stock. By the terms of the contract plaintiff was bound to retain this stock and could not dispose of it irrespective of the price he might be able to obtain therefor. The stock might become very valuable and yet plaintiff was prevented from obtaining the benefits of a sale because of the fact that he was obligated to keep the stock intact and be in readiness to sell it to the defendant at any time plaintiff left the employ of the corporation. He was also obliged to keep the stock so that in the event of his death, his estate, which was bound by the contract, would be in a position to perform the contract and deliver the stock to the defendant. Another very important feature was the fact that irrespective of its value, plaintiff was bound to sell the stock at par.

We are of the opinion that the Special Term erred in dismissing the complaint for insufficiency. The plaintiff's written agreement not to transfer the stock except in accordance with the terms of the contract would alone be a sufficient consideration to support the defendant's promise to repurchase within thirty days upon a request from plaintiff.

The judgment and order dismissing the complaint should be reversed, with costs, and the motion denied, with ten dollars costs, with leave to the defendant to answer within twenty days upon payment of said costs.

FINCH, P. J., and O'MALLEY, J., concur; MERRELL and McAVOY, JJ., dissent and vote for affirmance.

MERRELL, J. (dissenting). The action was brought to recover of defendant $5,000 and interest which plaintiff alleges he sustained in damages by reason of the failure and refusal of defendant to repurchase 100 shares of the common capital stock of the Deal Knitting Mills, Inc., and which plaintiff claimed in his complaint the defendant agreed to repurchase at the par value of said stock at any time within thirty days after plaintiff should request defendant so to do. Plaintiff's cause of action is based upon a written agreement, a copy of which is annexed to the complaint. The paragraph of said agreement denominated " First " is as follows:

" First. The said Jacques H. Hecht hereby agrees to repurchase from the said Edwin B. Hirschberg the said one hundred shares of common stock of Deal Knitting Mills, Inc., at the par value

thereof, at any time within thirty days after the said Edwin B. Hirschberg shall request the said Jacques H. Hecht in writing to make such repurchase."

It is for the failure to repurchase the said 100 shares of common stock of the Deal Knitting Mills, Inc., pursuant to said contract provision that plaintiff seeks to recover herein. At the time the agreement in question was drawn plaintiff was the owner of the 100 shares of stock of said Deal Knitting Mills, Inc., but nowhere in the agreement entered into between the parties did plaintiff ever agree to sell to the defendant said stock. Plaintiff obligated himself to do nothing, and, therefore, the bare promise on the part of defendant to repurchase from the plaintiff said stock was a promise without any consideration whatever. Plaintiff not binding himself to sell the stock which he owned, there was no consideration whatever for the agreement of the defendant to repurchase the same. Nowhere in the agreement can there be found any promise on the part of plaintiff to sell and deliver or transfer the stock in question to defendant. Both plaintiff and defendant signed the agreement which was under seal, but that certainly imposed no greater obligation than was indicated by the contract itself. A promise for a promise not constituting a consideration where one of the parties is bound and the other is not bound does not become any more effective by reason of the seals of the parties being appended to the instrument. The court below granted the motion of the defendant for dismissal of the complaint for insufficiency upon the authority of the case of *Hallgarten* v. *Wolkenstein* (204 App. Div. 487). Mr. Justice PAGE, writing for this court in that case, said (at p. 488): " The action was brought to recover the purchase price of certain stock. It is alleged that the plaintiff and defendant entered into a written contract, wherein the plaintiff agreed to sell and the defendant agreed to purchase from the plaintiff certain shares of stock for the sum of $15,000; *that the plaintiff duly tendered the stock to the defendant and demanded that the defendant accept the stock and pay for the same, which the defendant refused to do;* that the stock cannot readily be resold for a reasonable price; and that there is not an available market for the sale of said stock." (Italics are the writer's.)

The signature of Hallgarten to the contract in that case would have added nothing to it, as Wolkenstein was the only party by the terms of the agreement to be bound. While plaintiff signed the contract here, the terms of the contract imposed no obligation upon him, and, therefore, his signature was unnecessary. In the *Hallgarten* v. *Wolkenstein* case the contract was through a letter addressed to Hallgarten by Wolkenstein in the following language:

" Confirming my conversation with you, I hereby agree to repurchase from you three hundred seventy-five (375) shares of the capital stock of the U. S. High Speed Steel & Tool Corporation, which you now hold for the sum of $15,000 together with interest, and undertake to endeavor to pay for same on or before April 1st, 1921.

" Yours very truly,
" (Signed)   JEAN WOLKENSTEIN."

By section 82 of the Personal Property Law (added by Laws of 1911, chap. 571), subdivisions 1 and 3, it is provided: " 1. A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price.   *   *   *

" 3. A contract to sell or a sale may be absolute or conditional."

Defining mutuality of a contract, 13 Corpus Juris, under the title of " Contracts " (§ 191, p. 339), has this to say: "A contract of sale is mutual where it contains an agreement to sell on the one side and an agreement to purchase on the other.  But it is not mutual where there is an obligation to sell but no obligation to purchase, or an obligation to purchase but no obligation to sell."

The contract between the plaintiff and defendant here may be searched in vain for any promise on the part of plaintiff to sell and deliver after calling upon respondent to purchase.  There certainly was no greater obligation upon the defendant here because he reserved to himself the right to call upon plaintiff to buy than there was in the *Hallgarten* v. *Wolkenstein* case.  Had plaintiff expressly bound himself by the instrument which he signed to sell and deliver the 100 shares of stock in question to defendant, another situation would be presented.  Plaintiff bound himself to nothing, but merely obtained an agreement on the part of defendant to purchase the stock, if offered for sale.  Neither the complaint nor the agreement indicates any promise on the part of the plaintiff to sell and deliver the stock in question.  This court, in *Dittenfass* v. *Horsley* (177 App. Div. 143; affd., without opinion, 224 N. Y. 560), had under consideration the case of an agreement under seal whereby Horsley agreed to sell certain shares of stock to a man by the name of Selznick.  There was no corresponding promise on the part of Selznick to purchase such stock.  Judge LAUGHLIN, writing for this court (at p. 146), said: " Upon no theory was the agreement binding upon Selznick at the time of its execution, for he did not agree to perform [*Levin* v. *Dietz*, 194 N. Y. 376; *Stokes* v. *Carpenter*, 166 App. Div. 441], and even had he signed it, it could not be construed as obligating him to perform.  (*Booth* v. *Milliken*, 127 App. Div. 522.) "

In *Cook* v. *Casler* (87 App. Div. 8) plaintiff sued for specific

performance of a contract wherein the defendant's testator and his codefendant agreed that if plaintiff would procure and give them a surety bond as a protection against loss, they would pay plaintiff $4,000. Presiding Justice Parker, writing for the Appellate Division in that case, said (at p. 10): "It is clear that there is no mutuality in such agreement. The plaintiff does not agree to 'procure and give' the bond. He makes no promise and assumes no obligation whatever. The defendants receive no consideration whatever for their promise, and hence it is a mere *nudum pactum*. Not even a mutual and concurrent promise on the plaintiff's part can be found upon which to sustain it. * * *

"It is claimed, however, by the plaintiff that although he was not at all bound by the agreement so made, he did, in fact, fully perform on his part, and that thereupon a valuable consideration for the defendants' promise at once arose and the obligation became mutual.

"What the plaintiff did towards performance on his part was, that something over two months after the agreement he tendered to the defendants such a bond as was mentioned in the agreement, and demanded that they pay over the $4,000 and interest. The defendants refused to accept the bond or to pay over the money. In other words, they claimed that, not being bound by their promise, they were under no obligation to do so. It seems very clear that they were not bound by that promise; and I cannot see how a mere subsequent offer on the plaintiff's part to do the thing which at the time of the contract he would not undertake to do, could make the defendants' promise a binding one. When the promisor allows the promisee to proceed, and, upon the faith of such promise, do that which the promisor *requested* him to do, it is equitable that he himself be held liable upon *his* promise; but when the promisee does no more than to renew his request, the promisor is still at liberty to grant or refuse it, as he shall see fit, even though the promisee has by that time put himself in a condition to do that which he then for the first time offers to do. If the defendants had accepted the bond when the plaintiff tendered it, then their liability to pay over the money would be clear. Then the plaintiff would have fully performed on his part. He would have 'given' the defendants the bond. But that the defendants were obliged to accept that bond and pay over the money, merely because it was then tendered to them, I cannot agree to.

"There must have been not only a consideration, but an adequate one, passing to them before they can be adjudged to accept the bond. (22 Am. & Eng. Ency. of Law [1st ed.], 1031.) And clearly, until they have taken the bond and acquired the benefits flowing

therefrom, they have received no consideration whatever. They never made any request that such a bond should be procured, and up to the time of its tender to them no benefit or consideration of any kind had accrued to them. I am of the opinion that they were then under no obligations to take it, and that no facts have been proven that authorized a judgment compelling them to accept it. And clearly, if they were under no obligation to take the bond, they were under none to pay over the $4,000 to the plaintiff."

Justice PAGE, writing for this court, in *Hallgarten* v. *Wolkenstein* (*supra*, at p. 490), had this to say: " The test as stated in the last case is the one to be applied in these cases, could the defendant have sued the plaintiff on this contract? In the instant case, if Wolkenstein had tendered the money to plaintiff and plaintiff had refused to sell, would Wolkenstein have a right of action on this writing alone against plaintiff? It is too evident for cavil that he would not. A complete answer would be ' it is true you agreed to buy but I did not agree to sell.' "

We think, under the principles enunciated in the decisions aforesaid, in the case at bar the contract upon which plaintiff sued had no binding force or effect upon the defendant, and that, therefore, the complaint was properly dismissed for insufficiency.

The judgment and order appealed from should be affirmed, with costs to defendant, respondent, against plaintiff, appellant.

McAVOY, J., concurs.

Judgment and order reversed, with costs, and the motion denied, with ten dollars costs, with leave to the defendant to answer within twenty days from service of order upon payment of said costs.